**C & W FISH COMPANY, INC., et al., Plaintiffs,**

v.

**William W. FOX, Jr., Assistant Administrator for Fisheries National Oceanic and Atmosphere Administration, et al., Defendants,**

**and**

**State of Florida Marine Fisheries Commission and Coastal Conservation Association, Defendant Interveners.**

Civ. A. No. 90–1123 JGP.

United States District Court,
District of Columbia.

Aug. 9, 1990.

Eldon V.C. Greenberg, Washington, D.C., for plaintiffs.

Robert George Hayes, Charles Ray Shockey, Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM

JOHN GARRETT PENN, District Judge.

The plaintiffs filed this action on May 14, 1990 pursuant to the Magnuson Fishery Conservation and Management Act (MFCMA), 16 U.S.C. § 1801 *et seq.*, challenging defendants' prohibition on the use of drift gillnets[1] in the fishery for the Atlantic migratory group of king mackerels, as published in 55 Fed.Reg. 14833 (1990), hereinafter, sometimes referred to as the "Challenged Rule." Plaintiffs seek a declaratory judgment that the prohibition

---

**1.** A gillnet is "a wall of netting, suspended vertically in the water by floats along the top and weights along the bottom, that entangles the

head, gills, or other body parts of fish that attempt to pass through the meshes." 50 C.F.R. § 642.2. A drift gillnet is "a gillnet having a float line that is more than 1,000 yards in length; or any gillnet having a float line that is 1,000 yards or less in length, other than a runaround gillnet, that, when used, drifts in the water, that is, is not anchored at both ends, whether or not it is attached to a vessel." *Id.*

violates the MFCMA and the Administrative Procedure Act (APA), 5 U.S.C. § 551 *et seq.* The case is now before the Court on the cross-motions for summary judgment filed by the plaintiffs, defendants and defendant-interveners. The Court heard arguments on July 12, 1990.

## I

Very briefly, the facts are as follows: Plaintiff C & W Fish Company, Inc., a Florida corporation, is a wholesaler which is in the business of buying and selling fresh fish. A significant portion of its business is devoted to trade in Atlantic king mackerel and it reports that it is heavily dependent on vessels utilizing drift gillnets for its supply of Atlantic king mackerel. Complaint par. 4. Plaintiff Inlet Fisheries, Inc., a Florida corporation, is a wholesale fish packing house and it reports that Atlantic king mackerel represents 30%–40% of its product. It states that 70% of its purchases of Atlantic king mackerel comes from the drift gillnet fleet. Complaint par. 5. Plaintiffs James Jeffery Allman and Bruce Stiller are commercial fishermen who use drift gillnet gear in their business. Complaint pars. 6 and 7. Allman reports that between April and October, there is no other fishery in which his boat can profitably engage. Complaint par. 6. Bruce reports that there is no other fishery in which his vessel can readily and economically be utilized. Complaint par. 7. Both men state that their economic livelihood will be jeopardized if the Challenged Rule remains in effect. The defendants are William W. Fox, Jr., the Assistant Administrator for Fisheries of the National Oceanic and Atmospheric Administration (NOAA) and Robert A. Mosbacher, Secretary of Commerce.

Coastal migratory pelagic resources include seven species, king mackerel, Spanish mackerel, cobia, cero mackerel, little tunny, dolphin and bluefish. All are found on the Continental Shelf of the Atlantic and Gulf Coasts of the United States and all are migratory and found in particular areas at different times of the year. Complaint par. 10. Commercial and recreational fishing efforts for coastal migratory pelagic fish is primarily directed at king and Spanish mackerels, although cobia is also an important recreational target. Complaint par. 11. Within the United States Exclusive Economic Zone (EEZ), 3 to 200 miles offshore, the fishery occurs in the South Atlantic and the Gulf of Mexico, from the Virginia/North Carolina border to the United States/Mexico border. *Id.*

The primary commercial users of the mackerel resource are the hook-and-line fleet centered on the East Coast of Florida and the Florida Keys, and the gillnet fleet centered in the Florida Keys and the lower East and West Coasts of Florida, although a smaller hook-and-line fleet also exists in North Carolina. Complaint par. 12. Plaintiffs state that in 1988, the total commercial harvest of king mackerel was approximately 4.308 million pounds valued at a little over $5,000,000, while the total of Spanish mackerel amounted to 4.237 million pounds valued at approximately $1,500,000. *Id.*

Starting in 1986, drift gillnets were introduced into the Atlantic king mackerel fishery and by 1987, there were 13 vessels using this gear in the Atlantic king mackerel fishery. Complaint par. 14.

Plaintiffs allege that on three previous occasions, efforts by the Atlantic and Gulf Councils to secure an adoption on the use of drift gill nets failed. Complaint par. 22.[2] Plaintiffs state that the National Marine Fisheries Service (NMFS) Southeast Regional Director rejected the drift gillnet band for a fourth time on February 28, 1990, "finding that there was inadequate data to support a conclusion that prohibiting drift gillnet gear was needed for conversation or other purposes." Complaint par. 24. Defendant Fox approved the Challenged Rule on or about March 14, 1990. Complaint par. 25. The Challenged Rule was published in the Federal Register on April 19, 1990 and it was made effective on

---

**2.** The "South Atlantic Council" refers to the South Atlantic Fishery Management Council and the "Gulf Council" refers to the Gulf of Mexico Fishery Management Council.

April 13, 1990. *See* 55 Fed.Reg. 14833 and Complaint par. 26.

Plaintiffs contend that the drift gillnet ban is contrary to the provisions of the MFCMA because (1) Amendment 3 was never validly approved, (2) the ban is tainted by bias, prejudice and conflict of interest, (3) the ban is not supported by the record and (4) the ban violates the National Standards.

## II

Notwithstanding the substantial issues involved the case and the voluminous administrative record, the case is receiving expedited consideration since the plaintiffs represent that the fishing season for Atlantic king mackerel and the Spanish mackerel extends from April to October. Although the Court concludes that a detailed discussion is not warranted in view of the time constraints imposed on the Court, it has carefully considered the briefs filed by the parties and interveners as well as the relevant portions of the administrative record. After having done so, the Court concludes that the plaintiffs have failed to demonstrate that the actions of the defendants were arbitrary, capricious or otherwise not in accordance with law. Moreover, while the Court concludes that the argument relating to possible bias is not frivolous, it is satisfied that the plaintiffs have not demonstrated that the decision was tainted or that it should be set aside.

The standard of judicial review of MFCMA is found in the act itself. The act provides:

Regulations promulgated by the Secretary under this chapter shall be subject to judicial review to the extent authorized by, and in accordance with, chapter 7 of Title 5, if a petition for such review is filed within 30 days after the date on which the regulations are promulgated; except that (1) section 705 of such title is not applicable, and (2) the appropriate court *shall only set aside any such regulation on a ground specified in section 706(2)(A), (B), (C), or (D) of such title.*

16 U.S.C. § 1855(d) (emphasis the Court's). Thus, for the purposes of this case, "a court shall ... (2) hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). *See also, Kramer v. Mosbacher,* 878 F.2d 134, 136 (4th Cir.1989); *Alaska Factory Trawler Association v. Baldridge,* 831 F.2d 1456, 1460 (9th Cir.1987); *State of Maine v. Kreps,* 563 F.2d 1043, 1051 (1st Cir.1977). "In applying [the above] standard, the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973).

The question is not whether this Court agrees with the decision of the agency; the question is whether the decision made by the agency finds support in the administrative record. The Court concludes that the record supports the decision. Moreover, the regulation promulgated by the agency includes a discussion of the pros and cons relating to the Challenged Rule. 55 Fed.Reg. 14833 (1990), also set forth in A.R. 3760–3763.[3] The regulation refers to some 46 communications received during the comment period conveying the comments of 60 people and contains a discussion of the same issues that are raised in this case. As noted above, the comments contained in the regulation finds support in the record.

A second issue raised by the plaintiffs is that the decision was tainted due to the bias and conflict of interest of Mr. Fox. They argue that he was biased in favor of the hook-in-line fishermen and opposed to using drift gillnets, that as a result he prejudged the decision before reviewing the evidence and finally that he had a conflict of interest since he had formally served as Chairman of the Florida Marine Fisheries Commission, now a defendant-intervener in this case.

---

**3.** A.R. refers to the Administrative Record.

A rulemaker "should be disqualified only when there has been a clear and convincing showing that the agency member has an unalterably closed mind on matters critical to the disposition of the proceeding. The 'clear and convincing' test is necessary to rebut the presumption of administrative regularity." *Association of National Advertisers v. F.T.C.*, 201 U.S.App.D.C. 165, 184, 627 F.2d 1151, 1170 (1979) (citation omitted). *See also, Lead Industries Association v. Environment Protection Agency*, 208 U.S.App.D.C. 1, 43–51, 647 F.2d 1130, 1172–1180, *cert. denied*, 449 U.S. 1042, 101 S.Ct. 621, 66 L.Ed.2d 503 (1980).

A leading case relating to bias and possible disqualification of a member of an agency is *Cinderella Career Finishing Schools, Inc. v. FTC*, 138 U.S.App.D.C. 152, 425 F.2d 583 (1970). In that case, the Court of Appeals noted: "The test for disqualification has been succinctly stated as being whether 'a disinterested observer may conclude that [the agency] has in some measure adjudged the facts as well as the law of a particular case in advance of hearing it.'" 138 U.S.App.D.C. at 160, 425 F.2d at 591 (citations omitted). In *Association of National Advertisers*, the Court of Appeals observed "[we] never intended the *Cinderella* rule to apply to a rulemaking procedure such as the one under review. The *Cinderella* rule disqualifies a decision-maker if 'a disinterested observer may conclude that [he] has in some measure adjudged the facts as well as the law of a particular case in advance of hearing it'". 201 U.S.App.D.C. at 182, 627 F.2d at 1182 (citations omitted).

"The legitimate functions of a policymaker, unlike an adjudicator, demand interchange and discussion about important issues. We must not impose judicial roles upon administrators when they perform functions very different from those of judges." *Id.* The court went on to say "[the] *Cinderella* view of a neutral and detached adjudicator is simply an inapposite role model for an administrator who must translate broad statutory commands into concrete social policies. If an agency official is to be effective he must engage in debate and discussion about the policy mat-

ters before him." 201 U.S.App.D.C. at 182–183, 627 F.2d at 1182–83 (footnote omitted).

Here, the Court cannot conclude that Mr. Fox had an "unalterably closed mind." While it is true that it would not have been difficult to determine his inclination of the issue of drift gillnets, that does not rise to the level requiring his disqualification and that the agency decision now be set aside.

Third, the plaintiffs have raised several other contentions including the allegation that there was an improper delegation of authority and that the drift gillnet fails to fulfill National Standard No. 1 or National Standard No. 4. The Court has considered these arguments and finds them without merit.

Finally, as noted above, many of the disputes discussed by the parties have been fully set forth and discussed in the rulemaking process. *See* 55 Fed.Reg. 14833. That document speaks for itself and need not be repeated here.

Suffice it to say, after giving consideration to the entire record, the Court concludes that the plaintiffs' motion for summary judgment should be denied and that the defendants' and defendants interveners' motions for summary judgment should be granted and that this case should be dismissed with prejudice.

An appropriate order has been issued.

