**ORGANIZED FISHERMEN OF FLORI-DA, INC., a Not–For–Profit Corporation, Larry Goins, and Richard Nielsen, Plaintiffs,**

v.

**Barbara H. FRANKLIN, as Secretary of the United States Dept. of Commerce; Dr. William W. Fox, Jr., Individually and as Assistant Administrator for Fisheries National Oceanic and Atmospheric Administration; Andrew J. Kemmerer as Director Southeast Region, National Marine Fisheries Service, Defendants,**

and

**Florida Marine Fisheries Commission, Intervenor/Defendant.**

No. 91–10099.

United States District Court, S.D. Florida.

March 18, 1994.

---

`David Paul Horan, Key West, FL, for plaintiffs.

John Marshall, U.S. Dept. of Justice, Environmental and Natural Resources Div., Wildlife & Marine Resources Section, Washington, DC, Jonathan Glogau, Asst. Atty. Gen., Tallahassee, FL, for defendants.

## ORDER AFFIRMING MAGISTRATE'S REPORT AND RECOMMENDATION AND GRANTING FINAL SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes to this Court upon Plaintiffs' Objections to United States Magistrate Judge Ted E. Bandstra's October 26, 1993 Report and Recommendation recommending that the Court grant Defendants' Motion for Summary Judgment. Plaintiffs' Objections were filed December 3, 1993 and the Court heard oral argument on the issues on February 14, 1994.

After careful consideration of the parties' arguments and the relative caselaw, the Court has determined that summary judgment is appropriate in favor of Defendants.

### I. History of Case

This case presents a challenge to the administrative regulations issues by the United States Secretary of Commerce (the "Secretary") under the Magnuson Fishery Conservation and Management Act (the "Magnuson Act"), 16 U.S.C. §§ 1801 *et seq.* The Organized Fishermen of Florida and two individuals ("Plaintiffs") challenge Amendment IV to the Fishery Management Plan ("FMP") for the Snapper–Grouper Fishery of the Southeast Region ("Amendment IV"). 56 Fed.

Reg. 56016 (October 31, 1991). Specifically, Plaintiffs object to the regulation implementing Amendment IV which creates a ban on the use of fish traps in federal waters off the South Atlantic coast below Cape Canaveral, Florida. 50 C.F.R. Part 646. In their Complaint, Plaintiffs raise the following procedural and substantive challenges to the adoption of the fish trap ban:

(1) that the Assistant Administrator for Fisheries National Oceanic and Atmospheric Administration (the "NOAA"), Dr. William W. Fox, Jr., denied Plaintiffs due process by illegally interfering with the administrative process promulgating Amendment IV;

(2) that the regulation prohibiting fish traps is arbitrary and capricious and in violation of the national standards of the Magnuson Act; and

(3) that the composition of the South Atlantic Fishery Management Council (the "Council") did not fairly represent commercial fishing interests.

Defendants and the State of Florida, as Intervenor Defendant, move the Court for summary judgment arguing that the administrative record indicates that Plaintiffs received all process due in informal rulemaking procedures; that Amendment IV is supported by the record and is not arbitrary and capricious or in violation of national standards; that Plaintiffs lack a private right of action to challenge the composition of the Council; and that Dr. Fox is personally immune from any individual liability in this case.

United States Magistrate Ted E. Bandstra entered a Report and Recommendation recommending that the Court grant summary judgment in favor of Defendants and the State of Florida on all counts. The Magistrate found that Plaintiffs failed to show a material issue of fact to preclude summary judgment. Specifically, Magistrate Bandstra found that Plaintiffs failed to meet their burden of proof in establishing clear and convincing evidence of Dr. Fox's "unalterably closed mind" to support their due process claim; that Plaintiffs failed to establish the absence of evidence in support of the fish trap ban and therefore did not show that the decision was arbitrary and capricious; and that no implied right of action exists to allow Plaintiffs to challenge the composition of the Council.

Plaintiffs' objections to the Magistrate's Report center on the Magistrate's rejection of their due process and "arbitrary and capricious" claims. Specifically, Plaintiffs argue:

(1) the evidence indicating that Dr. Fox "so clearly lied and tried to cover up his dictatorial involvement with the Decision Memorandum on fish traps/Amendment IV" is sufficient to establish Fox's "unalterably closed mind, or at least sufficient to support a finding that Fox's unalterably closed mind is a disputed issue of fact that precludes summary judgment;"

(2) the Magistrate's conclusion that Dr. Fox delegated authority to Dr. Andrew J. Kemmerer, the Regional Director for the Southeast Region of the National Marine Fisheries Service, is not supported by the evidence;

(3) the Magistrate's conclusions regarding the best scientific evidence available are fatally flawed because he mistakenly assumes that the deposition testimony before the Court revealing serious opposition to the fish trap ban came from Council Members expressing their lay opinions rather than NOAA scientists expressing their expert opinions;[1] and

(4) the Magistrate's conclusion that the record contains adequate explanation for the Secretary's change in position is not supported by the evidence.

(Plaintiffs' Objections to October 26, 1993 Report and Recommendation, D.E. # 153).

Before considering these objections, clarification of the scope of this Court's review of this administrative action is necessary as the pleadings evince some confusion on the part of Plaintiffs as to the proper role of this Court on review.

---

1. Specifically, Plaintiffs object to the Magistrate's mistaken assumption that Turner, Lindall, Justen, Eldridge and Brown, those parties providing testimony in opposition to the fish trap ban, are Council Members, when in fact these parties are NOAA scientists and fishery administrators.

## II. Scope of Review

■ Judicial review of informal administrative action[2] is limited to the administrative record certified by the agency. The Supreme Court has specifically stated:

> "[T]he focal point of judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. s 706, to the agency decision based on the record the agency presents to the reviewing court.

*Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44, 105 S.Ct. 1598, 1607, 84 L.Ed.2d 643 (1985) (quoting *Camp v. Pitts*, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973)). Only in limited circumstances are courts permitted to look beyond the administrative record created by the agency process. Specifically, expansive judicial review may be warranted where the administrative record is devoid of the agency's reasoning and additional discovery in the form of affidavits or depositions of agency members is necessary to explain the agency's action. *See Camp v. Pitts*, 411 U.S. 138, 93 S.Ct. 1241. Additionally, where the agency relied on documents or materials outside the administrative record, a district court may inquire outside the record. *Id.* The court's inquiry, however, is limited. As the Ninth Circuit has explained, the reviewing court should go outside the administrative record to consider evidence relevant to the substantive merits of the agency action "for the limited purposes of ascertaining whether the agency considered all the relevant factors or fully explicated its course of conduct or grounds for decision." *Asarco, Inc. v. U.S.E.P.A.*, 616 F.2d 1153, 1160 (9th Cir.1980).

■ Courts have also permitted supplementation of the record through discovery where necessary to explain or clarify technical terms involved in the agency action. *Id.* Finally, courts will expand the scope of judicial review beyond the record where there are allegations of "bad faith" on the part of the agency. In such cases, however, "there must be a strong showing of bad faith or improper behavior before the Court may inquire into the thought processes of administrative decisionmakers." *Public Power Council v. Johnson*, 674 F.2d 791 (9th Cir. 1982).

■ Plaintiffs argue that the facts of this case fit neatly within this last exception and thus warrant expansive review. The Court has already permitted limited discovery on the issue of Dr. Fox's alleged bias against fish traps, allowing Plaintiffs to depose Dr. Fox and other scientific experts. However, this supplemental discovery was permitted for the limited purpose of resolving the alleged procedural irregularities and misconduct of Dr. Fox. It was not intended to create a new record for purposes of determining whether the agency's decision is arbitrary and capricious. The agency's substantive findings and conclusions must rise or fall on the record that was before it.

## III. Standard of Review

■ The standard of review of agency action is governed by the Administrative Procedure Act ("APA"). Case law interpreting the APA establishes that a district court reviewing the informal rulemaking of an agency should set aside the agency decision if the decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). *See Alaska Factory Trawler Ass'n v. Baldridge*, 831 F.2d 1456, 1460 (9th Cir.1987). Applying this standard—known as the "arbitrary and capricious" or "rational basis" standard—the court must look at whether there is a rational basis for the agency's decision evidenced in the record, not whether the court agrees with the agency's conclusion. Thus, judicial review under this standard is highly deferential to the agency decisionmakers. Therefore, in order to prove that the agency's decision was arbitrary and capricious, the moving party must show, not merely that the record contains evidence in support of their position, but that the record is devoid of reasonable evidence that would support the agency's decision.

---

**2.** The type of agency action at issue in this case is informal rulemaking.

### IV. No Due Process Violations

Plaintiffs' due process claim is based on the alleged bias of the agency decisionmaker. Specifically, Plaintiffs contend that Dr. Fox "illegally and maliciously interfered with the administrative process" thereby denying Plaintiffs their due process right to an impartial decisionmaker. In support of their claim, Plaintiffs point to the following facts which Defendants admit for the purpose of summary judgment: (1) Dr. Fox requested a draft of the Council's final decision prior to the close of the public comment; (2) Dr. Fox ordered the destruction of certain data compilations containing staff members notes following a telephone conference; (3) Dr. Fox told Dr. Kemmerer that he could change his vote on the fish trap ban; and (4) Dr. Fox denied knowledge of Dr. Kemmerer's position on the issue despite a previous conversation with Dr. Kemmerer on the issue.

### A. The undisputed facts do not establish by clear and convincing evidence that Dr. Fox had an unalterably closed mind.

 To establish the bad faith of Dr. Fox, Plaintiffs must establish by clear and convincing evidence that Dr. Fox had an "unalterably closed mind" in favor of the fish trap ban prior to hearing and evaluating the evidence before the agency. *See C & W Fish Co. v. Fox*, 931 F.2d 1556 (D.C.Cir.1991). In their Objections to the Magistrate's Report, Plaintiffs argue that the record supports a finding that Dr. Fox's bias and unalterably closed mind is "at least a disputed issue of fact which would preclude summary judgment." (emphasis omitted) (Plaintiffs' Objections, p. 16). However, the facts relied on by Plaintiffs are undisputed by Defendants for purposes of summary judgment. Therefore, the issue before the Court is whether the facts presented amount to "clear and convincing evidence" of Dr. Fox's unalterably closed mind which simply requires the Court to apply the law to the facts. The Magistrate found, and this Court agrees, that the undisputed evidence relied on by Plaintiffs does not amount to clear and convincing proof of Dr. Fox's unalterably closed mind.

First, the fact that Dr. Fox requested a draft of the Council's final decision prior to the close of public comment does not establish his bias against fish traps. The rulemaking procedure is an ongoing process. Policy decisions develop throughout the proceedings. At the point of public notice and comment, the agency has already formulated a policy decision which will likely be adopted in some form unless the public notice and comment brings new information or policy considerations to bare on the issue. Thus, while Dr. Fox's early request for a draft of the agency decision may have been unorthodox, there is nothing unlawful or bias about an administrator wanting to review a draft of the policy decision at a stage prior to the agency's final ruling. It merely evinces a desire to know how the agency expects the debate to be resolved.

The second fact Plaintiffs point to in support of their due process claim is Dr. Fox's alleged order that certain view slides be destroyed. While this attempt to exclude evidence from the record raises some suspicion of foul play, it does not rise to the level of clear and convincing evidence of Dr. Fox's unconstitutional prejudgment of the issue. Indeed, the fact that no evidence was actually destroyed or excluded from the record detracts from Plaintiffs' argument. Plaintiffs' argument assumes that the evidence ordered destroyed either (1) revealed Dr. Fox's bias against fish traps, or (2) contained scientific data that would have defeated the fish trap prohibition. However, since the view slides were never destroyed but were in fact included in the record, and since they do not contain clear and convincing evidence of prejudgment, the Court does not find the mere order of destruction, which never came to pass, to be sufficient proof of Dr. Fox's unalterably closed mind.

 The third fact that Plaintiffs rely on to establish Dr. Fox's unalterably closed mind is the statement by Dr. Fox to Dr. Kemmerer, "you can change your vote." The Court finds this statement vague and indeterminate. In the Court's view, this statement merely suggests that Dr. Fox and Dr. Kemmerer engaged in a policy debate. As the district court in *C & W Fish Co.* noted

and the D.C. Circuit agreed,[3] "[t]he legitimate functions of a policymaker, unlike an adjudicator, demand interchange and discussion about important issues." *C & W Fish Co. v. Fox*, 745 F.Supp. 6, 9 (D.D.C.1990) (citing *Ass'n of Nat'l Advertisers, Inc. v. FTC*, 627 F.2d at 1174). The court further explained that "if an agency official is to be effective he must engage in debate and discussion about the policy matters before him." *Id.*

Plaintiffs' last ground for establishing their due process claim focuses on Dr. Fox's denial that he knew where Dr. Kemmerer stood on the fish trap issue. Plaintiffs theorize that given Dr. Fox and Dr. Kemmerer's previous conversations, Dr. Fox must have known that Dr. Kemmerer opposed the fish trap ban. Taking this as true, the Court does not find that such evidence clearly and convincingly establishes Dr. Fox's bias.

Individually, none of the four facts relied on by Plaintiffs support a finding that Dr. Fox had an unalterably closed mind and thus deprived Plaintiffs of their due process right to an impartial decisionmaker. Even considering Plaintiffs' arguments in the aggregate, the Court concludes that Plaintiffs have failed to meet their burden of establishing Dr. Fox's bias by clear and convincing evidence.

In *C & W Fish Company*, the same Dr. Fox allegedly made public statements expressing his opposition to gill nets which were later banned by the Amendment at issue in that case. *Id.* The court there found that even his clear public expression of opposition to gill nets both prior to and during the rulemaking proceeding did not constitute clear and convincing evidence of an unalterably closed mind.

Here, the facts do not even amount to public expression of opposition to fish traps. There is no evidence in the record that Dr. Fox ever publicly stated his opposition to the fish traps. The fact that his opinion regarding the fish trap ban may have been inferred from his actions is not sufficient to establish clear and convincing evidence of his prejudgment. Courts recognize that agency administrators will have their own policy opinions and have refused to disqualify administrators on the grounds of those opinions. *See Ass'n of Nat'l Advertisers, Inc. v. FTC*, 627 F.2d 1151, 1174 (D.C.Cir.1979), *cert. denied*, 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1113 (1980), *overruled on other grounds by Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C.Cir.1984)). Therefore, even if the Court could infer Dr. Fox's opinion on fish traps from his actions, which it has not done, such inferences would not rise to the level of clear and convincing evidence of Dr. Fox's unalterably closed mind.

**B. The Magistrate correctly concluded that Dr. Fox delegated his authority to Dr. Kemmerer.**

██ Plaintiffs object to the Magistrate's conclusion that Dr. Fox delegated his authority to Dr. Kemmerer on the fish trap issue. Plaintiffs take the position that the record reveals that Dr. Fox so controlled the decision-making process that any alleged delegation of power to Kemmerer was destroyed. The Court finds this argument to be without merit. The delegation power under the NOAA Circular 83–37 permitted Dr. Fox to approve, disapprove or partially disapprove action taken by Dr. Kemmerer as a subordinate Regional Director. As the final decisionmaker, Dr. Fox had the authority to reach any decision that was supported by the record. Therefore, any conversations with

---

**3.** Affirming the lower court, the D.C. Circuit explained:

> We would eviscerate the proper evolution of policymaking were we to disqualify every administrator who has opinions on the correct course of his agency's future actions. Administrators, and even judges, may hold policy views on questions of law prior to participating in a proceeding. The factual basis for a rulemaking is so closely intertwined with policy judgments that we would obliterate rulemak-

ing were we to equate a statement on an issue of legislative fact with unconstitutional prejudgment.

*C & W Fish Co.*, 931 F.2d at 1565 (citing *Ass'n of Nat'l Advertisers, Inc. v. FTC*, 627 F.2d 1151, 1174 (D.C.Cir.1979), *cert. denied*, 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1113 (1980) *overruled on other grounds by Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C.Cir.1984)).

Dr. Kemmerer to ensure consistency of position were entirely within his delegation power and Plaintiffs challenge to the Magistrate's conclusions must fail.

## V. The adoption of Amendment IV was not "arbitrary and capricious."

Plaintiffs object to the Magistrate's conclusion that the record shows that Amendment IV is not arbitrary and capricious and is supported by the best scientific evidence. Plaintiffs argue two points. First, Plaintiffs object to the standard of review applied by the Magistrate; and second, Plaintiffs contend that the Magistrate misconstrued the source of the evidence before him and based on that misconception, incorrectly concluded that Amendment IV is not arbitrary and capricious. The Court has carefully reviewed the record and finds both of these arguments to be without merit.

### A. The Magistrate applied the correct standard of review.

▇▇▇ Plaintiffs correctly recognize that the standard of review to be applied in reviewing informal agency rulemaking, such as that presented by this case, is the arbitrary and capricious standard. As previously discussed, that standard looks at whether the record evinces a rational basis for the agency decision. However, Plaintiffs argue that Amendment IV represents a change in agency position and therefore the Magistrate should have conducted a more searching inquiry into the agency's rationale for the change in policy. Specifically, Plaintiffs argue that a change in agency policy requires the agency to make a "reasoned analysis" for the changed position and Plaintiffs contend that the record on review before this court

contains no such analysis. To the contrary, Plaintiffs argue, the record does not even acknowledge that Amendment IV represents a change in the Council's policy.[4]

Plaintiffs argument rests on the false presumption that the Council simply reversed its prior position. That is not the case. The NMFS first considered the issue of fish traps in 1983 and concluded that the best scientific evidence available at that time on the snapper grouper fishery called for serious regulation of fish traps but did not support a total prohibition. 48 Fed.Reg. 39463. However, the NMFS did not rule out the option of banning fish traps sometime in the future. Specifically, the NMFS stated that information acquired at a later date may warrant a future ban on fish traps. *Id.* In 1991, the Secretary revisited the issue of fish traps because newly acquired information based on an expanded data set indicated that a prohibition on fish traps was warranted and that such a ban would not violate the National Standards. The decision to institute the ban was not the result of the mere reconsideration of the same database used in 1983, but was based on a new set of data and information that indicated that the Council's suspicion in 1983 that fish traps harmed the snapper grouper fishery had come to pass.

The Court has carefully considered the evidence contained in the record and finds that the record supports the conclusion reached by the Council. The data relied upon by the Council supports their conclusions that the snapper grouper fishery had become overfished and that the continued use of fish traps would exacerbate the depletion and have an adverse impact on the fishery.[5] In addition, the evidence supports the

4. In support, Plaintiffs point to the deposition testimony of Peter Eldridge, the Fisheries Administrator and Plan Coordinator for Amendment IV who was in charge of the Decision Memorandum. According to that portion of Eldridge's deposition relied on by Plaintiffs, Eldridge did not know what the NMFS's position was on fish traps prior to Amendment IV. Plaintiffs apparently believe that this fact proves that the Amendment IV is arbitrary and capricious because it shows that the Council could not, and indeed did not, supply a reasoned explanation for their "change in policy." The Court disagrees. Amendment IV was not simply a reversal of an

earlier policy, it was a new position taken in response to new information and evidence. Furthermore, even if the Court construed Amendment IV as a change in policy, the Court finds that the Council provided a sufficient explanation under the arbitrary and capricious standard. The Court would not find that the Council inadequately explained its change simply because the articulated reasons did not refer back to the 1983 policy.

5. The evidence showed the following: (1) at least 13 fisheries in the snapper grouper fishery are overfished and 14 other species are thought to

conclusion that regulations on fish traps have been ineffective because the nature of fish traps makes regulations difficult to enforce.[6]

In their Objections, Plaintiffs do not dispute the evidence relied upon by the Council in adopting Amendment IV. They have raised no material issue of fact that would preclude summary judgment. Instead, Plaintiffs argue that other evidence exists in the record which supports the contrary result. The Court, however, is not permitted to substitute its judgment for that of the agency decisionmaker. If there is evidence in the record that provides a rational basis for the agency's decision, the Court must uphold the agency decision. In this case, the court concludes that such a rational basis is apparent from the record. The fact that the record may also contain conflicting data does not make the agency's decision "arbitrary and capricious."

### B. The Magistrate's mistaken assumption that Turner, Lindall, Justen, Eldridge and Brown were Council Members rather than scientist/experts does not alter the Court's conclusion that Amendment IV is supported by the record and in accordance with the national standards.

Plaintiffs final objection concerns the Magistrate's reference to certain deposition testimony which presented evidence of opposition to the fish trap ban. The Court has considered the Magistrate's conclusions in light of his mistaken references to Turner, Lindall, Justen, Eldridge and Brown as being

Council Members and finds that the fact that these witnesses are experts rather than Council Members does not alter the Magistrate's sound judicial reasoning. The fact that these witnesses opined that the fish trap ban was not supported by the best scientific evidence is not determinative of the question whether Amendment IV is arbitrary and capricious, regardless of whether those who opined are council members expressing their opposition to the rule or whether they are experts who oppose the rule. The record is clear that experts on both sides of the issue presented evidence to the Council; some opined that the scientific data supported the fish trap ban while others opined that it did not. It is the prerogative of the agency board to weigh those opinions and make a policy judgment based on the scientific data. It is not the place of this Court to reweigh the evidence. The scope of review is limited to the administrative record before this Court and the arbitrary and capricious standard of review simply requires this Court to look at all the evidence presented in the record to determine whether there is sufficient evidence to support the agency's decision. In this case, the record evinces sufficient evidence of support for the fish trap ban in the scientific community to sustain the agency's decision. The fact that Magistrate Bandstra misidentified the deposition witnesses as Council Members rather than experts does not alter the Court's finding that Amendment IV is not arbitrary and capricious or in violation of the national standards.[7]

---

be; (2) fish traps are inexpensive and readily available; (3) fish traps are highly efficient in low density stocks and therefore prevent low density stocks from escaping the pressures of commercial fishing; (4) fish traps are responsible for a substantial portion (approximately 10–40%) of the snapper fishery catch; (5) fish traps are nonselective and therefore catch non-targeted fish; (6) fish traps inflict injury and death on non-targeted fish including tropical fish at an injury rate as high as 20% and a mortality rate in the range of 2–7.5%; and (7) 90% of illegally placed traps failed to comply with existing regulations. AR vol. 7.

6. The evidence contained in the record further supports the conclusion that increasing the regulations on the minimum size restrictions would essentially result in de facto prohibition.

7. Plaintiffs' complaint challenges Amendment IV as being in violation of National Standards 2 and 4. The Magistrate concluded that no such violation exists. Although Plaintiffs have not specifically objected to this finding, the Court notes that the Magistrate's mistaken belief as to the source of the deposition testimony does not alter his findings.

National Standard 2 of the Magnuson Act requires that implementing regulations be based on the best scientific evidence. The Court has held that the Council's decision was based on the evidence presented in the record. Plaintiffs have made no showing of material fact tending to show that the evidence relied on was not the "best" scientific evidence available. Nor has the Court found any material dispute of fact going to this issue.

## VI. Private Right of Action

 Magistrate Bandstra also concluded that no private right of action exists for Plaintiffs to challenge the Council's composition. Therefore, he found it unnecessary to consider the issues of standing and immunity. Although Plaintiffs have expressed no objections to this finding, the Court has independently reviewed them and concludes that the Magistrate was correct in his determination. Therefore, the Court will affirm the Magistrate's finding that no private right of action exists.

## VII. Conclusion

For the reasons articulated in this opinion, the Court therefore holds that Plaintiffs have failed to raise any material issue of fact that would preclude summary judgment. Accordingly, the Court finds in favor of Defendants.

After independent review of the record, and the Court being otherwise fully advised, it is therefore

ORDERED and ADJUDGED that the Magistrate's Report and Recommendation be, and the same is hereby, AFFIRMED, and for the reasons stated herein, it is further

Plaintiffs' reliance on supplemental deposition testimony to attempt to create a material issue of fact is misplaced with respect to the question of Amendment IV's compliance with the national standards and suggests Plaintiffs misunderstanding of the scope of this Court's review. The Court permitted the supplemental discovery relied on by Plaintiffs for the limited purpose of resolving the allegations of procedural irregularities and misconduct by Dr. Fox. The depositions were not intended to create a new record for review. The question of whether Amendment IV violated the national standards must be resolved on the record certified by the agency. Even if the Court were permitted to consider the deposition testimony in resolving this question, the Court would not find the deposition testimony sufficient to raise a material issue of fact. As the Court has already noted, it is the agency's prerogative, not this Court's on review, to weigh the evidence before it.

ORDERED and ADJUDGED that Summary Judgment be, and the same is hereby, GRANTED in favor of Defendants.

DONE and ORDERED.

National Standard 4 requires that allocations made among American fishermen be fair and equitable, be reasonably calculated to promote conservation, and be carried out such that no particular individual or entity enjoys the exclusive share of the fishing privilege. Having found that the record supports the conclusion that Amendment IV was enacted in response to the depletion of the snapper grouper fishery, the Court cannot find that the Amendment is not reasonably calculated to promote conservation. Nor does the record contain evidence that Amendment IV allocates fishing privileges to a particular individual or entity. Although the Court does recognize that Amendment IV will have adverse facts on fish trappers in the area, the Court finds and the record indicates that the adverse impact on trappers are outweighed by the overall benefits to the fishery and the environment. Accordingly, the Court agrees with Magistrate Bandstra's conclusion and finds that Amendment IV does not violate National Standard 4.