**William J. SULLIVAN, George H. Davidson, Roger A. Witt, Thomas W. Cobb and L. Stuart Penny, Plaintiffs–Appellees,**

v.

**LTV AEROSPACE AND DEFENSE COMPANY, The LTV Corporation, LTV Key Employee Retention Plan and Directors of the LTV Corporation, Plan Administrator, Defendants–Appellants.**

No. 757, Docket 95–7527.

United States Court of Appeals, Second Circuit.

Argued Dec. 18, 1995.

Decided May 6, 1996.

█

---

Michael J. Dell, Nessen, Kamin & Frankel, New York City (Gregory A. Horowitz, of counsel), for Defendants–Appellants.

Alan J. Bozer, Gary J. Gleba, Albrecht, Maguire, Heffern & Gregg, P.C., Buffalo, for Plaintiffs–Appellees

Before: LEVAL, CALABRESI, Circuit Judges and SPATT, District Judge.*

SPATT, District Judge:

This appeal arises from the denial of severance benefits to the plaintiffs under the LTV Key Employee Retention Plan ("KERP" or the "Plan"). The plaintiffs are former employees of the Sierra Research Division ("Sierra") of the LTV Aerospace and Defense Company ("LTV"), who were terminated in November 1990. Sometime thereafter they were informed that they were not entitled to severance benefits under the KERP. They brought suit in the United States District Court for the Western District of New York seeking monetary awards in the amount of the severance benefits to which they were allegedly entitled. After a twelve day jury trial in November 1994, the plaintiffs were awarded the total sum of $960,116.93 in unpaid severance benefits plus interest and $174.382.86 in attorneys' fees.

The defendants appeal from the following decisions and rulings of the district court: (1) denying the defendants' motion for summary judgment; (2) denying the defendants' motion to strike the plaintiffs' jury demand; (3) the jury instructions involving the burden of proof; (4) denying the defendants' post trial motions; (5) granting attorneys' fees; and (6) the final amended judgment.

After the commencement of this lawsuit, the plaintiff, George H. Davidson realized he was only entitled to thirteen weeks of severance benefits because of other compensation he received during the two years after his termination. Based on his limited claim, the jury awarded him the sum of $35,016.32. The defendants do not appeal from this award.

I. *Background*

In 1987, operating under Chapter 11 of the Bankruptcy Code, LTV obtained permission from the Bankruptcy Court to institute the KERP to provide severance benefits to employees terminated under certain circumstances. The KERP is an unfunded plan. The purpose of the Plan was to attract and retain employees who were concerned about continued employment with a Company having financial difficulties.

According to the provisions of the Plan, KERP benefits would be provided to any participant who is a "Member" and suffers a "Termination of Employment." It is undisputed that the plaintiffs were "Members" of the Plan and that Sierra is an Operating Entity under the Plan. "Termination of Employment" is defined as:

> termination by the Corporation of a Member's employment by the Corporation for any reason other than Cause or Disability ... [which] occurs *coincident with* or within the twenty-four (24) month period immediately following the occurrence of a Benefit Event.

KERP § 2.23 (emphasis supplied). A "Benefit Event" is defined as:

> the first to occur of (a) any sale, liquidation, divestiture involving all or any material portion of the stock or assets of, *or the downsizing of, the Corporation or the Operating Entity within which such a Member is employed,* (b) the consummation of a Plan of Reorganization with respect to the Corporation; (c) the conversion of any Chapter 11 proceedings involving the Corporation to proceedings

* The Honorable Arthur D. Spatt, District Judge, United States District Court for the Eastern District of New York, sitting by designation.

under Chapter 7 of the Bankruptcy Code, or (d) the appointment of a trustee in proceedings under the Bankruptcy Code with respect to the Corporation. (emphasis supplied)

KERP § 2.03. Downsizing is defined as follows:

a downsizing of the Corporation or Operating Entity within which the Member is employed shall be deemed to have occurred if within any consecutive six (6) month period the number of employees of such Corporation or Operating Entity shall be reduced by more than twenty percent (20%).

KERP § 2.03. KERP essentially provides Members with two years severance pay at one hundred percent of base salary payable at regular intervals, together with certain health and welfare benefits.

The decision to award benefits is made by a Committee (the "Committee") appointed by the Board of Directors (the "Board") and consisting of outside members of the Board. KERP § 2.07. "The administration of the Plan, the exclusive power to interpret it, and the responsibility for carrying out its provisions are vested in the Committee." KERP § 5(a).

The defendants read the above sections of the Plan together as providing that a Member is entitled to benefits if his employment is terminated for any reason other than cause or disability coincident with or within the twenty-four month period immediately following the occurrence of a "Benefit Event" such as a downsizing. Further, a downsizing occurs if within a consecutive six month period the number of employees of the operating entity shall be reduced by more than twenty percent. Applying this interpretation, the Committee denied the plaintiffs' request for severance benefits, reasoning that at the time they were terminated in November 1990, the Company had not yet reduced its workforce by twenty percent. The twenty percent threshold was not reached until January 21, 1991. Rather, at the time the plaintiffs were discharged, the Company had only reduced its workforce by fourteen percent, an amount insufficient to trigger benefit entitlements.

However, the plaintiffs interpret this Plan language as including Members who are discharged during the six month period culminating in the twenty percent downsizing. According to the plaintiffs, these terminations are "coincident with" the Benefit Event, i.e., the twenty percent workforce reduction, and therefore those employees discharged are entitled to severance benefits under KERP. Accordingly, the plaintiffs reason that they were discharged within a six month period during which twenty percent of the workforce was terminated, and therefore, they are entitled to benefits.

On September 29, 1993, the district court denied the defendants' motion for summary judgment on the ground that there were material triable issues of fact as to whether the Committee's decision to deny the plaintiffs benefits was arbitrary and capricious. On April 13, 1994, the district court denied the defendants' motion to strike the plaintiffs' jury demand. After a jury trial in November 1994, the jury returned a verdict in favor of the plaintiffs in the total sum of $960,116.93 plus interest. At the request of the plaintiffs, the district court treated the jury verdict as advisory for the limited purpose of adopting its findings of fact in the event that the Second Circuit were to determine that a jury trial is inappropriate in cases seeking review of a plan administrator's decision to deny benefits to plan participants.

## II. *Discussion*

The substantive issues underlying the parties' dispute are two-fold. First, the Court must determine the proper standard for reviewing the Committee's interpretation of the Plan. Second, the Court must determine whether the district court properly applied this standard.

Any discussion of the appropriate standard of review of a trustee's interpretation of an ERISA benefit plan begins with the seminal case of *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In *Firestone,* the Supreme Court recognized that "[a] trustee may be given power to construe disputed or

doubtful terms [of a plan], and in such circumstances that trustee's interpretation will not be disturbed if reasonable." *Id.* at 111, 109 S.Ct. at 954. Further, the Supreme Court held "that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115, 109 S.Ct. at 956–57. Where the administrator is given discretionary authority to interpret the plan, the administrator's interpretation is reviewed for an abuse of discretion. *Id.* In addition, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there has been an abuse of discretion.'" *Id.,* quoting, Restatement (Second) of Trusts § 187. Comment d.(1959).

In *Pagan v, NYNEX Pension Plan,* 52 F.3d 438 (2d Cir.1995), a decision which we note was decided after the district court rendered its rulings in this case, this Court held that "[w]here [as here] the written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, we will not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.'" *Pagan,* 52 F.3d at 441. We enunciated this standard despite the plaintiff's contention that a less deferential standard should be applied where the administrators have a conflict of interest.

In *Pagan,* notwithstanding that the plaintiff, like our plaintiff, argued conflict of interest, the court applied the abuse of discretion standard and held that "[w]here it is necessary for a reviewing court to choose between two competing yet reasonable interpretations of a pension plan, this Court must accept that offered by the administrator." *Pagan,* 52 F.3d at 443, citing, *Jordan v. Retirement Committee of Rensselaer Polytechnic Institute,* 46 F.3d 1264, 1274 (2d Cir. 1995) ("even if that interpretation were as reasonable as the interpretation adopted by the ... Committee ... the arbitrary and capricious standard would require us to defer to the interpretation of the ... Commit-

tee"). Significantly, the *Pagan* court also recognized that a plaintiff's conflict of interest argument will not alter this rule where the plaintiff "fails to explain how such an alleged conflict affected the reasonableness of the interpretation." *Id.*

In *Pagan,* the plaintiff based her conflict of interest argument on the fact that the plan at issue was unfunded and that members of the administrative committee were also employees of the plan sponsor. This is virtually the same conflict of interest argument made by the plaintiffs in this case except that the members of the Committee here were outside directors of the company and not employees. In support of her attempt to obviate the deference standard, the plaintiff in *Pagan* cited *Brown v. Blue Cross & Blue Shield of Alabama,* 898 F.2d 1556, 1561–68 (11th Cir.1990), *cert. denied,* 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991). In *Brown,* the Eleventh Circuit held that under *Firestone,* "[t]he inherent conflict between the fiduciary role and the profit-making objective of an insurance company makes a highly deferential standard of review inappropriate." *Id.* at 1562 (referring to the "arbitrary and capricious" standard). However, as we stated in *Pagan,* we decline to concur with the rule in *Brown* and adhere to the arbitrary and capricious standard of review in cases turning on whether the decision was based on an alleged conflict of interest, unless the conflict affected the choice of a reasonable interpretation.

In reviewing the plaintiff's conflict of interest claim in *Pagan* we affirmed summary judgment in favor of the administrator because Pagan failed to explain how the conflict of interest affected the Committee's interpretation. Following the standard of *Firestone* and *Pagan,* we conclude that, in cases where the plan administrator is shown to have a conflict of interest, the test for determining whether the administrator's interpretation of the plan is arbitrary and capricious is as follows: Two inquiries are pertinent. First, whether the determination made by the administrator is reasonable, in light of possible competing interpretations of the plan; second, whether the evidence shows that the administrator was in fact influenced by such

conflict. If the court finds that the administrator was in fact influenced by the conflict of interest, the deference otherwise accorded the administrator's decision drops away and the court interprets the plan *de novo.*

Having reviewed the substantive law with regard to the interpretation of a Plan by a Committee with a conflict of interest, we now turn the issues raised by the defendants' appeal.

### 1. *The summary judgment motion*

At the close of discovery the defendants moved for summary judgment arguing that the Committee has the exclusive right to interpret the plan, and that any determination made by the Committee could be overturned in a court proceeding only if it was arbitrary and capricious. In their motion, the defendants contended that the Committee's interpretation of the Plan was not only reasonable, it was compelled by the language of the Plan. The defendants offered multiple reasons in support of the Committee's interpretation.

The defendants contend that the plaintiffs' interpretation of the Plan would create inconsistencies within the structure of the Plan itself. For example, they argue that the plaintiffs' reading would read the word "event" out of the phrase "Benefit event" because the word "event" usually refers to something that happens at a discrete moment. They also note that the plaintiffs' reading of the Plan would give employees terminated during a downsizing greater rights to benefits than employees terminated as the result of other benefit events. (Under the plaintiffs' reading a downsizing would last for six months. Employees terminated during a downsizing therefore could qualify for benefits during a 30 month period, while those terminated coincident with other Benefit Events would receive benefits only during the twenty-four month period specified in the Plan.)

In addition to these arguments about the language and structure of the Plan itself, the defendants argue that the administration of the Plan under the plaintiffs' interpretation would be impossible. For example, the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. § 1161 et seq. entitles employees to purchase certain benefits after their discharge. The Plan itself, in certain circumstances, also provides for lump sum payments upon termination. Under the plaintiffs' interpretation of the Plan, at the moment when twenty percent of covered employees had been terminated, these types of benefits would become retroactively available to those employees fired in the preceding six months. Even more complicated would be the administration of a Plan provision that requires continued payment of health benefits for a certain period after termination. Under the plaintiffs' reading of the Plan a determination of entitlement to these benefits could not be made in some cases until six months after termination had occurred. It would thus be impossible to comply with the requirement that benefits be paid continuously from the date of termination for all employees covered by KERP.

In spite of these arguments, Judge Skretny denied the defendants' motion for summary judgment. *Sullivan v. LTV Aerospace & Defense Co.,* Case No. 91 CV 713S, 1993 WL 405495 (W.D.N.Y. Sept. 29, 1993). In reaching its decision, the district court recognized that "the Committee's interpretation cannot be adjudged arbitrary and capricious simply because plaintiffs have offered a plausible alternative interpretation." *Id.* However, the court also ruled that while the administrator's decisions should be overturned only if arbitrary and capricious, one of the factors contributing to the court's decision is whether there is a conflict of interest. *Id.* at 12, citing, *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). A conflict of interest may be found where there is an unfunded plan and the administrator is also an employee of the sponsoring company. *Id.* at 12. In such a situation, the administrator has conflicting fiduciary duties to the plan sponsor, his employer, and the participants as plan beneficiaries.

Applying these standards, the district court found that the plaintiffs had presented sufficient issues of material fact regarding the Committee members' conflict of interest to preclude summary judgment. Specifically,

Judge Skretny found that the Committee members owed a fiduciary duty to the Company, whose financial difficulties they would want to ameliorate, and also to the KERP beneficiaries, whose benefit requests—given that the Plan was unfunded—could be granted only directly at the Company's expense. *Id.* at 13. The court concluded that these competing demands were especially strong under the then existing conditions at the Company. In fact, the court concluded that the financial conditions at LTV were so severe at that time that the corporate executives and members of the Board were aware that costs had to be cut in any way possible, and that significant downsizing was likely. *Id.* at 21. Furthermore—and of particular importance—the court found that Roger Dunn, LTV's Senior Vice President of Human Resources had a significant, and perhaps improper, role in actually determining who was eligible for KERP benefits. *Id.* at 14–15.

In reviewing the language of the Plan, Judge Skretny noted that it was ambiguous, but the Committee's interpretation was not on its face arbitrary and capricious—that is, that the interpretation was a reasonable one. Indeed, the defendants "persuasively argue[d] that the Committee's decision to deny benefits was the only reasonable interpretation of the [P]lan." *Id.* at 16. But the district court concluded that the evidence recounted above raised issues of material fact as to whether the Committee members' decision to deny the plaintiffs' request for benefits was arbitrary and capricious because of their alleged conflict of interest. The defendants now appeal from the district court's decision denying the motion for summary judgment.

■ Applying the standards set forth in *Firestone* and *Pagan,* and the two factor test evolved from *Pagan* as described above, the Court finds that the district court properly denied the defendants' motion for summary judgment. As a preliminary matter, we find that the interpretations of the Plan by the plaintiffs and defendants are both reasonable, as a matter of law. Accordingly, the district court had to determine whether the plaintiffs had raised sufficient questions of

fact as to whether a conflict of interest had influenced the choice between two reasonable interpretations of the Plan's language. We conclude here that the district court properly held that both the question of whether a conflict of interest existed and question of the effect of any such conflict on the Committee's choice of interpretation precluded summary judgment.

Accordingly, the district court's denial of the defendants' motion for summary judgment is affirmed.

2. *The motion to strike the plaintiffs' jury demand*

■ After the defendants' motion for summary judgment was denied, the defendants renewed their previously adjourned motion to strike the plaintiffs' jury demand. The defendants argued that the plaintiffs' claims were essentially equitable in nature and as such should not be tried by a jury. In support of their motion the defendants noted that all eight circuit courts which addressed this issue held that claims for ERISA benefits were not entitled to a jury trial. The district court disagreed and denied the motion to strike the jury demand. *See Sullivan v. LTV Aerospace & Defense Co.,* 850 F.Supp. 202 (W.D.N.Y.1994).

This issue turns on the interpretation the ERISA section 502(a)(1)(B) and (a)(3) which provide as follows:

(a) A civil action may be brought—

 (1) by a participant or beneficiary—

* * *

 (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, of clarify his rights to future benefits under the terms of the plan;

* * *

 (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress violations or (ii) to enforce any provision of this subchapter or the terms of the plan.

Notwithstanding the circuit court decisions to the contrary, the district court followed what it deemed to be the "first case to thoroughly examine this issue," *Stamps v. Teamsters Joint Council*, 431 F.Supp. 745 (E.D.Mich.1977), and held that a jury trial was appropriate. In *Stamps*, the district court reasoned that ERISA section 502 distinguishes between causes of action for legal relief under section 502(a)(1)(B) and equitable relief under section 502(a)(3). While subsection (a)(3) expressly provides for equitable relief, subsection (a)(1)(B) includes a right to recover "benefits due," which is legal in nature. The district court noted that the basic rules of statutory construction require reading a statute so as to give meaning to each section. Applying this rule, section (a)(1)(B) can be read to provide legal relief. The district court held that any other interpretation would render subsection (a)(3), explicitly providing for equitable relief, to be meaningless. *Id.* at 747.

Moreover, in the view of the district court in *Stamps*, the legislative history of section 502 provides that actions arising under that section should be treated in similar fashion to those arising under the Labor–Management Relations Act ("LMRA"), which are legal rather than equitable in nature. *Id.*, citing, H.R.Conf.Rep. No. 93–1280, 93d Cong., 2d Sess., *reprinted in*, 1974 U.S.Code. Cong. & Admin.News, 5038, 5107.

In reaching his conclusion Judge Skretny rejected the holdings of the circuit courts finding no right to a jury trial in suits to recover benefits under ERISA. For example, in *Wardle v. Central States, S.E. & S.W. Areas Pension Fund*, 627 F.2d 820 (7th Cir. 1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981), the Seventh Circuit held that the silence of Congress on the jury trial issue reflects an intention "that suits for pension benefits by disappointed applicants are equitable. Such suits under the law of trusts have existed for quite a while in federal courts under their diversity jurisdiction." *Id.* at 829. *Wardle* rejected the conclusion reached in *Stamps* that reading section 502(a)(1)(B) as providing equitable relief would be superfluous in light of section 502(a)(3). Instead, the Seventh Cir-

cuit recognized that "[t]he types of claims enumerated in section 502(a)(1)(B) would still have to be separated in some manner from general equitable actions under section 502(a)(3) because Congress granted state courts concurrent jurisdiction only over section 502(a)(1)(B) claims. 29 U.S.C. § 1132(e)(1). Thus, the statutory scheme does not imply that section 502(a)(1)(B) claims are legal." *Id.*

Moreover, the Seventh Circuit found that the *Stamps* court misinterpreted the ERISA legislative history. It held that the legislative history's reference to the LMRA meant only that courts should fashion a federal common law under ERISA, not that the right to a jury trial should be imposed. Other circuit courts ruling that there is no right to a jury trial in suits brought pursuant to ERISA § 502(a)(1)(B) include *Borst v. Chevron Corp.*, 36 F.3d 1308, 1323–24 (5th Cir. 1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1699, 131 L.Ed.2d 561 (1995); *Cox v. Keystone Carbon Co.*, 894 F.2d 647, 649–50 (3d Cir.), *cert. denied*, 498 U.S. 811, 111 S.Ct. 47, 112 L.Ed.2d 23 (1990); *Daniel v. Eaton Corp.*, 839 F.2d 263, 268 (6th Cir.), *cert. denied*, 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988); *Howard v. Parisian, Inc.*, 807 F.2d 1560, 1566–67 (11th Cir.1987); *Berry v. Ciba–Geigy Corp.*, 761 F.2d 1003, 1006–07 (4th Cir.1985); *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1357 (9th Cir.1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985); and *In re Vorpahl*, 695 F.2d 318 (8th Cir.1982).

The defendants contend that the district court erred in adopting the reasoning in *Stamps* over that applied in *Wardle*. While both arguments are plausible, this Court now joins its sister circuits and decides that there is no right to a jury trial in a suit brought to recover ERISA benefits. A persuasive factor in favor of finding no right to a jury trial is that:

The significance of the [arbitrary and capricious] standard, while second nature to a judge, is not readily communicated to jurors. Moreover, the presumption of correctness that attaches to private administrative action here is incompatible with a jury trial scheme. Courts addressing this

issue have almost uniformly held that under the common law of trusts proceedings to determine rights under employee benefit plans are equitable in character and thus a matter for a judge, not a jury. *Berry,* 761 F.2d at 1006–07 (citation omitted); *see also Transamerica Occidental Life Ins. Co. v. DiGregorio,* 811 F.2d 1249, 1251 n. 2 (9th Cir.1987); *Turner v. CF & I Steel Corp.,* 770 F.2d 43, 46 (3d Cir.1985).

This conclusion is a natural extension of this Court's decision in *Katsaros v. Cody,* 744 F.2d 270 (2d Cir.), *cert. denied,* 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984). In *Katsaros,* the plaintiffs sued under ERISA section 502(a)(1)(B) to remove trustees and require them to repay all losses occasioned by them. Despite the repayment remedy, this Court found that the relief sought was equitable in nature and held that a jury trial was inappropriate. Similar to our ruling in *Katsaros,* we now find that the relief sought here is also equitable in nature, and is not triable by a jury. Accordingly, the order denying the defendants' motion to strike the jury demand is reversed.

### 3. *The burden of proof*

 The defendants also contend that the jury instructions were erroneous on several grounds. We address this issue even though we have decided that a jury trial is not warranted because the same standards apply whether the verdict is rendered by judge or jury and because Judge Skretny adopted the jury verdict—and thus, presumably the standard enunciated in his instructions to the jury—as his own. First, the jury was instructed to determine whether the defendants' decision to deny benefits was arbitrary and capricious based on a conflict of interest. Then, the jury was directed to consider whether the defendants' decision was arbitrary and capricious on any other ground.

With respect to the first tier of jury instructions addressing the conflict of interest issue, the defendants maintain that the jury instructions were erroneous because they improperly placed the burden of proof on the defendants to demonstrate that the conflict of interest did not affect the decision to deny benefits. The relevant jury instructions were as follows:

The plaintiffs in this case ... have the burden of proving by a preponderance of the evidence that the defendants operated under a conflict of interest in interpreting the KERP plan. ...

If the plaintiffs do prove that the defendants operated under a conflict of interest, then the defendants have the burden of proving by a preponderance of the evidence that their interpretation of the KERP plan was not tainted by self interest. In other words, the defendants then must prove that their interpretation benefitted the class of all participants.

 The defendants contend that this shifting of the burden to the defendants was impermissible as it nullifies the deference traditionally afforded to plan administrators under the arbitrary and capricious standard and contravenes the thrust of the decision in *Pagan.* The Court agrees. These burden shifting instructions can be traced to the Eleventh Circuit's *Brown* decision discussed above. *See Brown,* 898 F.2d at 1566–67. However, the pertinent rulings in *Pagan* and *Brown* are in conflict. As stated above, in *Pagan* we determined that a reasonable interpretation of the Plan will stand unless the participants can show not only that a potential conflict of interest exists, as the plaintiffs' have shown here, but that the "conflict affected the reasonableness of the Committee's decision." *Pagan,* 52 F.3d at 443. This burden rests with the plaintiffs. *See id.* Such a shifting of the burden of proof to the defendants is contrary to the traditional burden of proof in a civil case. We hold that the burden of proving that the conflict of interest affected the administrator's decision rests with the plaintiffs.

 In addition, the defendants contend that the trial court improperly instructed the jurors that they had to find the defendants' interpretation of the Plan arbitrary and capricious by a "preponderance of the evidence" when the finding should have been by "clear and convincing evidence." In support of this proposition, the defendants cite *Smoake v. Willingham,* 359 F.2d 386, 388 (10th Cir.1966); *Organized Fishermen, Inc.*

*v. Franklin,* 846 F.Supp. 1569, 1572 (S.D.Fla. 1994); *Joseph L. DeClerk & Assocs., Inc. v. United States,* 26 Cl.Ct. 35, 41 (1992); *cf. Seff v. National Org. of Indus. Trade Unions Ins. Trust Fund,* 781 F. Supp. 1037, 1040 (S.D.N.Y.1992).

According to the defendants, the first three cases, *Smoake,* Franklin and *DeClerk and Assocs.,* apply the clear and convincing evidence standard in cases turning on whether a decision is arbitrary and capricious in a non-ERISA context. The fourth case, *Seff,* states that the court will not overturn the trustees' decision unless it is strongly convinced that the trustees erred or that the decision was completely unreasonable. However, none of these cases squarely addresses the issue presented here, namely the proper burden of proof with regard to a trustee determination denying a claim for benefits. We will now undertake our own analysis.

"The function of the standard of proof, as that concept is embodied in the Due Process clause and in the realm of factfinding, is to 'instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.'" *Addington v. Texas,* 441 U.S. 418, 423, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979), quoting, *In re Winship,* 397 U.S. 358, 370, 90 S.Ct. 1068, 1076, 25 L.Ed.2d 368 (1970) (Harlan, J. concurring). The purpose of creating the standard is "to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision." *Id.*

The familiar burden of proof standards occur along a continuum with a "preponderance of the evidence" at one end and "beyond a reasonable doubt" at the other. The "clear and convincing evidence" standard falls somewhere in between. The issue at hand is whether the "preponderance of the evidence" standard, as opposed to the "clear and convincing evidence" standard applies to cases brought under ERISA seeking review of trustee decisions denying benefits.

"A preponderance-of-the-evidence standard allows both parties to share the risk of error in roughly equal fashion." *Herman & MacLean v. Huddleston,* 459 U.S. 375, 390,

103 S.Ct. 683, 687, 74 L.Ed.2d 548 (1983) (internal quotation omitted). This standard is usually applied in "monetary dispute[s]" between private parties, *Addington,* 441 U.S. at 423, 99 S.Ct. at 1808, and is the customary standard in civil ligation.

The intermediate standard, "clear and convincing evidence" places a greater burden on the plaintiff than the "preponderance of the evidence" standard and is applied in circumstances where our society has a bias in favor of the preservation of a relationship or a condition. Examples of cases in which the Supreme Court has applied the "clear and convincing evidence" standard include proceedings to terminate parental rights, *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), involuntary commitment proceedings, *Addington, supra,* deportation proceedings *Woodby v. INS,* 385 U.S. 276, 285–86, 87 S.Ct. 483, 487–88, 17 L.Ed.2d 362 (1966), and denaturalization proceedings, *Chaunt v. United States,* 364 U.S. 350, 353, 81 S.Ct. 147, 149, 5 L.Ed.2d 120 (1960).

We see no reason in this type of case to depart from the standard that is customary for money disputes and other civil litigation. Accordingly, the court finds that the "preponderance of the evidence" standard appropriate here.

### 4. *The post trial motions*

After the jury verdict, the defendants moved, pursuant to Fed.R.Civ.P. 50, for judgment as a matter of law. The arguments presented in this motion were based on the issues already discussed in this opinion.

In denying the defendants' Rule 50 motion, the district court found that a rational jury could have determined that the defendant's interpretation of the Plan was arbitrary and capricious as a result of a conflict of interest. First, the court concluded that a conflict of interest was evidenced by the Committee being composed of outside members of LTV's Board of Directors, having fiduciary obligations to both the company and the KERP plan beneficiaries. Second, the benefit payments were payable from the company's operating budget. Third, LTV's serious finan-

cial condition provided increased incentive to the Committee to reduce costs wherever possible, such as by denying severance benefits.

The district court also found that a reasonable jury could have determined that the defendants' interpretation of the plan was unreasonable based on other factors. Specifically, the plaintiffs presented extrinsic evidence that the Plan's language did not require that the twenty percent threshold must first be met before any benefits are payable. Moreover, the plaintiffs presented evidence that their interpretation of the Plan was rational, required by the plain meaning of the language, and in accordance with the purpose of the Plan.

■ In our view, the evidence was legally sufficient to support a finding in plaintiffs' favor. Although the trial judge stated that he adopted the jury's findings as those of the court, we nonetheless remand for new findings. This is for two reasons. First, the judge made no explanation of how he arrived at his findings. Second, we can infer that the judge followed the erroneous burden shifting approach on which he instructed the jury. We therefore remand for the trial court to reconsider its findings following the two-factor test we have outlined, with the burden of proof falling on plaintiffs to prove their case by a preponderance of the evidence.

In making its findings, the district court may rely upon the evidence adduced at the jury trial, if that evidence is adequate to resolve the controversy. If additional evidence is required, the district court may reopen the proceedings and receive such evidence as it finds necessary.

5. *Attorneys' fees*

■ The defendants' final contention is that the award of attorneys' fees was unwarranted. Their argument is simply that because the judgment should be vacated so should the award of attorneys' fees. We agree. Since the judgment is vacated, except as to the plaintiff George Davidson, the attorneys' fees awarded to the other plaintiffs are also vacated pending resolution of this matter by the district judge in accordance with the rules of law set forth in this opinion.

*Conclusion*

We conclude that: (1) the decision denying the defendants' motion for summary judgment is affirmed; (2) the plaintiffs are not entitled to a trial by jury on their ERISA claim to recover benefits under the Plan; (3) the burden of proving that the conflict of interest by the Committee affected their interpretation of the plan, is on the plaintiffs; (4) the overall burden of proof in this case is by a "preponderance of the evidence"; (5) the judgment in favor of the plaintiffs William J. Sullivan, Roger A. Witt, Thomas W. Cobb and L. Stuart Penny is vacated; (6) the award of attorneys' fees, except as to the plaintiff, George H. Davidson, is vacated; and (7) the judgment in favor of the plaintiff George H. Davidson in the sum of $35,016.32 is affirmed.

This case is remanded to the district court for further findings and determinations in accordance with this opinion.