**James R. LARSEN, Plaintiff,**

v.

**THE PRUDENTIAL INSURANCE COMPANY OF AMERICA Defendant.**

**No. 3:99CV2017 GLG.**

United States District Court, D. Connecticut.

July 17, 2001.

Dion W. Moore, Williams, Cooney & Sheehy, Trumbull, CT, for Plaintiff.

Benjamin A. Solnit, Ronald J. Cohen, Robert C. Hinton, Tyler, Cooper & Alcorn, New Haven, CT, for Defendant.

## *MEMORANDUM DECISION*

GOETTEL, District Judge.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, plaintiff James R. Larsen and defendant The Prudential Insurance Company of America filed cross motions for summary judgment. For the reasons discussed below, plaintiff's motion for summary judgment [**Doc # 31**] is DENIED and defendant's motion for summary judgment [**Doc # 34**] is GRANTED.

## *BACKGROUND*

This action was brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), appealing defendant's denial of plaintiff's claim for long-term disability benefits. Following removal from state court and dismissal of all pendent state law claims, the parties cross-moved for summary judgment.

Plaintiff has a long history of Gastroesophageal Reflux Disease (GERD)[1] includ-

---

1. Gastroesophageal reflux disease is the con- dition resulting from the backward flow of

ing treatment on Nov. 4, 1997. He was hired by Nicholstone, Inc. on Nov. 24, 1997 and became eligible for coverage under Nicholstone's group long-term disability policy on Jan. 1, 1998. On Aug. 21, 1998, plaintiff underwent an operative procedure for the treatment of GERD and suffered complications which kept him hospitalized until Sept. 14, 1998 and have left him unable to work.

Under the plan, benefits are provided to covered employees who meet all the contractual requirements of the policy. The policy includes the following pre-existing condition exclusion:

F. NOT COVERED

. . .

(3) A period of Disability which starts within 12 months of the date you become a Covered Person and is due to a pre-existing Sickness or Injury. Such a sickness or Injury is one which was diagnosed or for which any charges were incurred or treatment was rendered within 90 days before the date you became a Covered Person.

The policy provides that coverage ends when employment ends, as defined by a section of the policy contract entitled "End of Employment," which states:

An Employee's employment ends when the Employee is no longer actively at work on a full-time basis for the Employer. But, for insurance purposes, the Contract Holder [Nicholstone] may consider the Employee as still employed and in the Covered Classes for the insurance during certain types of absences

from full-time work. The Contract Holder decides which Employees with those types of absences are to be considered as still employed, and for how long.

. . .

An absence due to a disability for which benefits are not provided by reason of the Not Covered section of the Long Term Disability Coverage is not an eligible type of absence.

The plaintiff submitted a claim form to the defendant indicating that his last day of work was Aug. 1, 1998, and his first day of absence from work due to sickness or injury was Aug. 1, 1998. Nicholstone's "Employer's Statement" portion of the claim form indicates that the plaintiff's last day worked was Apr. 4, 1998 and his first day absent was May 1, 1998.[2] The treating physician's statement portion of the claim form indicates the illness that caused the patient to stop working was gastroesophageal reflux.

Plaintiff claims that his disability did not begin until he suffered complications from the surgical procedure on Aug. 21, 1998. He further asserts that his absence from work from Aug. 1, 1998 to Aug. 21, 1998 was not due to a disability. Defendant asserts that plaintiff's absence starting Aug. 1, 1998 was due to a disability caused by a pre-existing condition and, therefore, was not covered. Defendant also asserts that plaintiff was no longer a member of the covered class of employees because he failed to meet the active work requirement of the policy.

---

acid from the stomach up into the esophagus. *Merck Manual of Diagnosis & Therapy,* 232 (Mark H. Beers, M.D. & Robert Berkow, M.D. eds., 17th ed.1999).

**2.** The defendant relied on plaintiff's statement that his last day worked was Aug. 1, 1998. The discrepancy between employee's and em-

ployer's reported work-stoppage dates is not dispositive. Plaintiff, as a travelling salesman, did not necessarily have to visit the employer's office between May 1, 1998 and Aug. 1, 1998. Giving the benefit of doubt to plaintiff, we use the later date, Aug. 1, 1998.

## DISCUSSION

### I. Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact based on a review of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Fed. R.Civ.P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). There is no genuine issue of material fact if the evidence is such that no reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Once the moving party has made a showing that there are no genuine issues of fact to be tried, then the burden shifts to the non-moving party to raise triable issues of fact. *Id.* at 256, 106 S.Ct. 2505. Mere conclusory allegations will not suffice. Instead, the non-moving party must present "sufficient probative evidence" to show that there is a factual dispute. Fed. R.Civ.P. 59(e). If there is no genuine issue of material fact, the moving party is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In considering a motion for summary judgment, this Court is required to view the evidence in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. This is true even though the Court is presented with cross-motions for summary judgment. *Barhold v. Rodriguez*, 863 F.2d 233, 236 (2d Cir.1988). The movant's burden does not shift when cross-motions for summary judgment are before the Court. Rather, each motion must be judged on its own merits. *See Association of Int'l Auto. Mfrs., Inc. v. Abrams*, 84 F.3d 602, 611 (2d Cir.1996). Thus, neither party may be entitled to summary judgment even though cross-motions for summary judgment have been filed. *See Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir.1993); *A.W. v. Marlborough Co.*, No. 3:96CV2135(AHN), 1998 WL 737875, at *1 (D.Conn. Sept.9, 1998).

### II. Standard of Review under ERISA

■ The Supreme Court has ruled that the standard of review for denial of benefits challenged under ERISA, 29 U.S.C. § 1132(a)(1)(B), is *de novo*, unless the plan expressly gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The Second Circuit has not required the use of "magic words such as 'discretion' and 'deference'" to avoid the stricter standard of review, although their presence is helpful in deciding the issue of discretionary authority. *Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1271 (2d Cir.1995) (quoting *Schein v. News Am. Publ'g Inc.*, 1991 WL 117638, at *4 (S.D.N.Y. June 24, 1991)). However, the burden of proving the application of the arbitrary and capricious standard is on the plan administrator. *Sharkey v. Ultramar Energy Ltd.*, 70 F.3d 226, 230 (2d Cir. 1995).

■ In this case, the policy's language grants defendant the authority to determine eligibility for benefits and construe the terms of the plan by using the phrases "when Prudential determines" and "when Prudential decides" in sections discussing eligibility for coverage and benefits. *See Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir.1995) (holding that the phrase, "shall determine conclusively," in

the plan document grants defendant discretion to make eligibility decisions and to construe the terms of the plan); *Kocsis v. Standard Ins. Co.,* 142 F.Supp.2d 241, 251 (D.Conn.2001) (concluding that language in the policy "... and Standard reserves to itself [t]he right to determine: a. Your eligibility for insurance; b. Your entitlement to benefits..." was sufficient to reserve discretion to defendant); *Kiley v. Travelers Indem. Co. of Rhode Island,* 853 F.Supp. 6 (D.Mass.1994) (concluding that language in the plan stating, "as determined by the Company," conferred discretion to determine eligibility for benefits and support use of the arbitrary and capricious standard); *but see Kinstler v. First Reliance Standard Life Ins. Co.,* 181 F.3d 243, 251 (2d Cir.1999) (finding that language in the plan stating that insurer would pay a benefit if insured submits "satisfactory proof," was not sufficient to reserve to plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan).

■ Where the administrator has such discretionary authority, the court reviews the administrator's decision under the arbitrary and capricious standard. This scope of review is narrow and highly deferential to a plan administrator's determination. *Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst.,* 46 F.3d 1264, 1271 (2d Cir.1995). Accordingly, a reviewing court can overturn a denial of benefits only if the plan administrator's decision was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pagan,* 52 F.3d at 442 (citations omitted). A district court also cannot substitute its judgment for that of the plan administrator. *Id.*

■ Moreover, under the arbitrary and capricious standard of review (which we apply in this case), a district court is limited in the scope of its review and may consider only the administrative record (i.e., the claim file) before the administrator when it made its decision. *Miller v. United Welfare Fund,* 72 F.3d 1066, 1071 (2d Cir.1995). Consequently, a district court reviewing an ERISA denial of benefits is effectively functioning in an appellate capacity because it is precluded from considering new evidence. *See Rizk v. Long Term Disability Plan of Dun & Bradstreet Corp.,* 862 F.Supp. 783, 791 (E.D.N.Y.1994) (stating, in a decision on a summary judgment motion for an ERISA denial of benefits, that the motion is more properly considered one under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings). Thus, we find that it is appropriate to decide this case on the basis of the administrative record with no consideration of evidence not included in that record.

■ In his motion, plaintiff asserts that when defendant decided to deny him disability benefits, it was operating under a conflict of interest because of its dual role in determining eligibility and paying benefits. In the Second Circuit, a district court must apply the arbitrary and capricious standard unless a plaintiff proves that the "conflict affected the choice of a reasonable interpretation." *Sullivan v. LTV Aerospace & Defense Co.,* 82 F.3d 1251, 1255 (2d Cir.1996); *see Whitney v. Empire Blue Cross & Blue Shield,* 106 F.3d 475, 477 (2d Cir.1997) (discussing the Second Circuit's rules under *Sullivan* and *Pagan* for applying a less deferential standard of review). If a plaintiff shows that a conflict exists, a court must determine whether the administrator's decision was reasonable in light of potential conflicting interpretations of the plan and whether the plaintiff has proven that the administrator was in fact influenced by the conflict of interest. *Sullivan,* 82 F.3d at 1255–56. Once plaintiff establishes these two fac-

tors, the district court must interpret the denial of benefits *de novo. Id.* at 1256. Other than the conclusory statement in the motion that defendant's decision to deny plaintiff benefits presented a conflict of interest, plaintiff does not adduce any facts or evidence tending to establish the existence of a conflict or how a conflict, if it existed, affected the reasonableness of the determination. In the absence of such proof, this Court will continue to apply a deferential standard to defendant's decision.

Plaintiff contends that defendant acted arbitrarily and capriciously because it was unreasonable for defendant to disregard the medical opinions in his claim file supporting his eligibility for disability benefits. In the denial letter, Defendant stated that the denial of benefits was based on plaintiff's failure to meet the requirements of the policy, making the medical opinions irrelevant. This Court finds no basis for plaintiff's claim that defendant acted arbitrarily and capriciously in denying eligibility.

III. *Standard for Policy Interpretation under ERISA*

▮▮▮ Interpretation of the terms of an ERISA plan is governed by the "federal common law of rights and obligations under ERISA-regulated plans." *Firestone Tire & Rubber Co.,* 489 U.S. 101, 110, 109 S.Ct. 948 (internal quotation marks omitted). In applying these principles, the court interprets and enforces "unambiguous language in an ERISA plan" according to its "plain meaning." *Aramony v. United Way Replacement Benefit Plan,* 191 F.3d 140, 149 (2d Cir.1999). "Language is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Id.* (quoting *O'Neil v. Retire-*

*ment Plan for Salaried Employees of RKO Gen., Inc.,* 37 F.3d 55, 59 (2d Cir. 1994)). In making a determination of ambiguity, "reference may not be had to matters external to the entire integrated agreement." *Id.* In this case, the terms and conditions of the policy are unambiguous and the Court interprets the policy according to its plain meaning. For words not defined in the policy, a non-legal dictionary can supply the everyday, common meaning. *See, e.g., United States v. Dauray,* 215 F.3d 257, 260 (2d Cir.2000) (in non-ERISA context, court used Webster's Third New International Dictionary for definitions to help find "ordinary, common-sense meaning of the words").

IV. *Review of Denial of Benefits*

▮▮▮ Defendant denied the plaintiff's claim for benefits on the following two grounds: (1) the plaintiff's period of disability was due to a pre-existing sickness or injury and therefore not covered, and (2) the plaintiff was no longer a member of the covered class because he failed to meet the policy's active work requirement. There is substantial evidence to support defendant's determination that plaintiff was not eligible for benefits.

The policy clearly states that a period of disability due to a pre-existing sickness is not covered under the policy. Plaintiff's GERD falls into the category of a pre-existing sickness because he received treatment for it on Nov. 4, 1997, within the 90 day period before he became covered by the policy. Furthermore, the treating physician's statement submitted in support of plaintiff's claim states the reason plaintiff stopped working as gastroesophageal reflux. The plaintiff's self-reported absence from work starting Aug. 1, 1998 was due to his sickness. Disability is defined as the inability to pursue an occupation or perform services for wages because of

physical or mental impairment. *Webster's Third New Int'l Dictionary* 642 (1966). Therefore, under the plain meaning of the word, plaintiff's absence was a period of disability and therefore not covered by the policy.

This determination is squarely within the clear and unambiguous language of the policy's exclusion for pre-existing conditions and is consistent with decisions from other courts which have addressed similarly worded exclusions for pre-existing conditions. *See Farley v. Arkansas Blue Cross & Blue Shield,* 147 F.3d 774, 777–78 (8th Cir.1998) (reversing and remanding district court's granting of summary judgment in favor of claimant because claimant's "postoperative diagnosis of two additional conditions that were also corrected by the hysterectomy [did] not alter the fact that [the claimant] had the surgery to correct her heavy bleeding and enlarged uterus, which were detected before she was eligible for Plan benefits"); *Haley v. Paul Revere Life Ins. Co.,* 77 F.3d 84, 90–91 (4th Cir.1996) (affirming district court's granting of summary judgment in favor of insurer who had denied benefits on the basis that the claimant had been treated within the ninety day pre-existing condition period for the "very condition that disabled him"); *Marshall v. UNUM Life Ins. Co.,* 13 F.3d 282, 284–85 (8th Cir.1994) (affirming district court's granting of summary judgment in favor of insurer who had denied benefits on the basis that the claimant's "medical records clearly establish[ed] that during the pre-existing condition period she sought treatment of her disabling condition" and that the court "need only decide whether her disabling condition is linked to her pre-existing condition"). It is equally clear that defendant properly determined that the plaintiff's period of disability, which began when he stopped working due to GERD, was due to a pre-

existing sickness and therefore not covered by the policy.

 Consistent with the determination of ineligibility due to the pre-existing exclusion, defendant also denied benefits because the plaintiff was no longer a member of the covered class of employees as of the date he stopped working due to GERD, on Aug. 1, 1998. The clear and unambiguous language of the policy defines his absence from work due to a disability for which benefits are not provided as a type of absence not eligible for coverage.

The record clearly indicates that plaintiff was denied benefits because he was not eligible for coverage. This Court finds that the administrator's interpretation of the policy is reasonable, supported by substantial evidence, and not erroneous as a matter of law. Thus, defendant's denial of benefits was neither arbitrary nor capricious.

For the reasons stated, plaintiff's motion [**Doc # 31**] is DENIED and defendant's motion [**Doc # 34**] is GRANTED.

**SO ORDERED.**