06-5100-cv(L)
McCauley v. First Unum Life Ins. Co.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2007

(Argued: February 7, 2008    Decided: December 24, 2008)

Docket Nos 06-5100-cv(L), 06-5529-cv (Con)

--------------------------------------------------------x

JOHN E. MCCAULEY,

      Plaintiff-Appellant,

-- v. --

FIRST UNUM LIFE INSURANCE COMPANY,

      Defendant-Appellee,

SOTHEBY'S HOLDINGS INC., SOTHEBY'S INC., and
SOTHEBY'S SERVICE CORP.,

      Defendants.

--------------------------------------------------------x

B e f o r e :  WALKER, B.D. PARKER, and HALL, Circuit Judges.


    Plaintiff-Appellant John McCauley appeals from an order of

the United States District Court for the Southern District of New

York (Lawrence M. McKenna, J.) dismissing his complaint

challenging the decision by his ERISA plan administrator, First

Unum Life Insurance Co., to deny his claim for long-term disability benefits.  Applying the Supreme Court's framework from Metropolitan Life Insurance Co. v. Glenn, 128 S. Ct. 2343 (2008), we find that the plan administrator abused its discretion in denying plaintiff's claim.  The district court's dismissal is REVERSED, and the case is REMANDED for the district court to enter summary judgment in favor of appellant and for calculation of benefits, costs, and attorney fees to be awarded to appellant.

EUGENE R. ANDERSON,(Dona S. Kahn, on the brief), Anderson Kill & Olick, P.C., New York, N.Y., for Plaintiff-Appellant.

PATRICK W. BEGOS,(Evan L. Gordon, New York, N.Y., on the brief), Begos Horgan & Brown, LLP, Westport, Conn., for Defendant-Appellee.

JOHN M. WALKER, JR., Circuit Judge:

In light of the Supreme Court's decision in Metropolitan Life Insurance Co. v. Glenn, 128 S. Ct. 2343 (2008), we must reassess our standard of review governing cases such as this one that challenge an Employee Retirement Income Security Act ("ERISA") plan administrator's decision to deny disability benefits, where the administrator has a conflict of interest

2

because it has both the discretionary authority to determine the validity of the employee's claim and pays the benefits under the policy. Our current standard of review allows a court to review de novo the administrator's decision when it is shown that a conflict of interest actually influenced that decision. See Sullivan v. LTV Aerospace & Defense Co., 82 F.3d 1251, 1255-56 (2d Cir. 1996). We find this standard to be inconsistent with the Supreme Court's instructions in Glenn and abandon it. We now adhere to the Supreme Court's clarified explication of the standard of review governing such cases, which is that such a conflict of interest is to be "weighed as a factor in determining whether there [wa]s an abuse of discretion," Glenn, 128 S. Ct. at 2348 (quotation marks omitted) (emphasis in original). After applying this standard, we hold that, as a matter of law, the plan administrator abused its discretion in denying plaintiff's claim for long-term disability benefits.

**BACKGROUND**

Plaintiff-Appellant John McCauley ("McCauley") was a Senior Vice President and Director of the Tax Department at Sotheby's Service Corporation in April 1991, when he was diagnosed with advanced colon cancer. On April 24, 1991, he underwent a radical hemicolectomy and experimental chemotherapy, in which

3

several gallons of special chemotherapy drugs were inserted into his peritoneal cavity to "bathe all the organs in the stomach cavity." McCauley's treatment also included intravenous chemotherapy and chemo catalyst drugs. These drastic procedures saved McCauley's life. From April 1991 through July 1991, McCauley took short-term disability leave because of his cancer treatment.

In December 1991, McCauley accepted a transfer within Sotheby's to Hamilton, Bermuda, where he worked as Senior Vice President and Chief Executive Officer of Fine Art Insurance, Ltd., a subsidiary of Sotheby's. Over the course of the next three years, McCauley continued to experience other health problems and took short term disability leaves. Specifically, in September 1992, McCauley had part of his liver removed because his cancer had metastasized there. By December 1992, he suffered from a severe liver infection, and in April 1994, he underwent surgery to repair a hernia.

In November 1994, after notifying Sotheby's that he could no longer work, McCauley requested disability benefits. At that point, McCauley took short term disability leave one final time for a period of three months. Although McCauley's cancer treatment was successful, the procedures had taken a toll on his

body.  In particular, McCauley suffered from chronic diarrhea, chronic and acute renal impairment, incontinence, progressive vascular sclerosis, high cholesterol, insomnia, depression, and incisional scarring and pain.  Defendant-Appellee First Unum Life Insurance Company ("First Unum") was Sotheby's disability insurance provider.  Under the disability plan, First Unum was both the administrator and ultimate payor of benefits.

On May 19, 1995, First Unum denied McCauley's claim, and on June 14, 1995, McCauley appealed the decision and submitted additional information for First Unum to consider.  On September 18, 1995, First Unum rejected McCauley's appeal.  After this denial, McCauley, attempting to return to the workforce, accepted employment as General Counsel of IBJ Schroeder, Ltd. in Bermuda.  Despite paying premiums on McCauley's policy with First Unum during his absence from the workforce, Sotheby's informed McCauley that it would stop paying those premiums now that he had other employment; however, Sotheby's informed McCauley that he was eligible to convert the policy and make future payments, which he did.  McCauley's symptoms and health problems persisted.  After working at several jobs for short periods of time, McCauley realized that he was not able to work.  On January 16, 1996, he applied for long term disability benefits under his conversion

5

policy.  First Unum denied this claim on the basis that McCauley's employment with Sotheby's had terminated on November 26, 1994, and, therefore, that he had exercised his conversion after the allowable period.

McCauley then brought this action alleging that First Unum had denied his claims under the original and conversion policies in bad faith.  After taking discovery, First Unum moved for judgment on the administrative record.  At the same time, McCauley moved for summary judgment under Federal Rule of Civil Procedure 56.  Treating both requests as motions for summary judgment, the District Court for the Southern District of New York (Lawrence M. McKenna, J.) denied McCauley's motion and granted summary judgment in favor of First Unum, finding that a de novo standard of review was not applicable and that First Unum's actions were neither arbitrary nor capricious.  McCauley v. First UNUM Life Ins. Co., No. 97 Civ. 7662, 2006 WL 2854162 (S.D.N.Y. Oct. 5, 2006).  McCauley appeals from that dismissal.

**DISCUSSION**

I.  **Legal Standard**

We review de novo a district court's decision granting summary judgment in an ERISA action based on the administrative

record and apply the same legal standard as the district court. Pagan v. NYNEX Pension Plan, 52 F.3d 438, 441 (2d Cir. 1995); see also Glenn v. MetLife, 461 F.3d 660, 665 (6th Cir. 2006). "Summary judgment is appropriate only where the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fay v. Oxford Health Plan, 287 F.3d 96, 103 (2d Cir. 2002).

The standard governing the district court's review, and accordingly our review here, of an administrator's interpretation of an ERISA benefit plan was first articulated by the Supreme Court in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989). The Court explained that "a denial of benefits . . . is to be reviewed under a de novo standard unless the benefit plan gives the administrator . . . authority to determine eligibility for benefits or to construe the terms of the plan." Id. at 115. Where such authority is given, the administrator's interpretation is reviewed for an abuse of discretion. Id. Furthermore, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" Id. (quoting Restatement (Second) of

Trusts § 187, cmt. d (1959)) (alteration in original).

Following the Court's instructions, we held in Pagan that in cases in which an abuse of discretion standard of review applies, because "written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, we will not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.'" 52 F.3d at 441. We further noted that a possible conflict of interest would not alter the standard of review where the plaintiff "fails to explain how such an alleged conflict affected the reasonableness of the [administrator's] decision." Id. at 443. In Pagan, however, we did not address how a conflict of interest should be accounted for where it does affect the reasonableness of an administrator's interpretation. We answered that question in Sullivan v. LTV Aerospace & Defense Co., 82 F.3d at 1255-56, explaining that:

> [I]n cases where the plan administrator is shown to have a conflict of interest, the test for determining whether the administrator's interpretation of the plan is arbitrary and capricious is as follows: Two inquiries are pertinent. First, whether the determination made by the administrator is reasonable, in light of possible competing interpretations of the plan; second, whether the evidence shows that the administrator was in fact influenced by such conflict. If the court finds that the administrator was in fact influenced by the conflict of interest, the deference otherwise accorded the administrator's decision drops away and the court interprets the plan de novo.

8

*Id.*

*Sullivan* implied that, in the absence of something more, the existence of a conflict of interest would not change the standard of review. And we squarely held in *Pulvers v. First Unum Life Insurance Co.*, 210 F.3d 89, 92 (2d Cir. 2000), that the arbitrary and capricious standard continues to apply when the only evidence of a conflict of interest is that an insurer acts as both adjudicator and payor of claims.

Read together then, our case law made clear that the arbitrary and capricious standard applies "unless the [plaintiff] can show not only that a potential conflict of interest exists, . . . but that the conflict affected the reasonableness of the [administrator's] decision." *Sullivan*, 82 F.3d at 1259 (internal quotation marks omitted). However, upon a showing that "the conflict affected the choice of a reasonable interpretation," the court interprets the plan *de novo*. *Id.* at 1255.

**A.   The District Court's Decision**

Following this precedent, the district court turned to the question of whether *de novo* review was appropriate here. McCauley argued that certain procedural irregularities that occurred in the handling of his claim demonstrated that First

Unum's conflict of interest had affected its decision to deny him benefits. These alleged irregularities included contentions that one document was missing from the administrative record and that First Unum had incorrectly told McCauley that his claim had been reviewed by a medical doctor when in fact it been reviewed by a nurse.

The district court found these allegations insufficient to warrant de novo review. McCauley, No. 97 Civ. 7662, 2006 WL 2854162, at *6. It noted that McCauley had failed to show any evidence indicating that First Unum lost the missing document in bad faith. Id. at *7. Regarding the discrepancy over whether a doctor or nurse reviewed the file, the district court found that, in denying his benefits, First Unum had principally relied on the recommendation of McCauley's own physician that McCauley should not engage in heavy lifting or extreme physical exertion. This finding settled any concerns the district court had over whether First Unum consulted a physician before denying McCauley's claim. Id.

The district court next addressed whether McCauley had demonstrated that First Unum's decision was arbitrary and capricious. Id. at *8-9. After concluding that "documents submitted by [McCauley]'s own physician indicated that [McCauley]

10

was not fully disabled," the district court held that, as a matter of law, First Unum's decision was reasonable.  The district court therefore awarded summary judgment in its favor.  Id. at *15.

McCauley then brought this appeal.  While the appeal was pending in this court, the Supreme Court decided Glenn.

**B. Metropolitan Life Insurance Co. v. Glenn**

In Glenn, the Supreme Court clarified its earlier decision in Firestone.  The Court noted that Firestone set forth four principles of review:

(1) In determining the appropriate standard of review, a court should be guided by principles of trust law . . . [;] (2) Principles of trust law require courts to review a denial of plan benefits under a de novo standard unless the plan provides to the contrary[;] (3) Where the plan provides to the contrary by granting the administrator or fiduciary discretionary authority to determine eligibility for benefits, trust principles make a deferential standard of review appropriate[; and] (4) If a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion.

Glenn, 128 S. Ct. at 2347-48 (citing Firestone, 589 U.S. at 111-15) (quotation marks and alterations omitted) (emphasis in original).

After acknowledging these principles, the Court "directly focus[ed] upon the application and the meaning of the fourth

11

[principle]." Id. at 2348. Addressing the question of "whether the fact that a plan administrator both evaluates . . . and pays benefits claims creates the kind of 'conflict of interest' to which Firestone's fourth principle refers," the Court concluded that "it does." Id. at 2348. The Court reasoned that

> [i]n such a circumstance, every dollar provided in benefits is a dollar spent by the employer; and every dollar saved is a dollar in the employer's pocket. The employer's fiduciary interest may counsel in favor of granting a borderline claim while its immediate financial interest counsels to the contrary. Thus, the employer has an interest conflicting with that of the beneficiaries, the type of conflict that judges must take into account when they review the discretionary acts of a trustee of a common-law trust.

Id. (internal quotation marks, alterations, and citations omitted). The Court then addressed the question of how this conflict should be taken into account upon judicial review of a discretionary benefit determination. See id. at 2350.

The Court clarified that under Firestone, such a "conflict should be weighed as a factor in determining whether there is an abuse of discretion." Id. (internal quotation marks omitted). In doing so, the Court rejected the notion that the conflict of interest justifies changing the standard of review from deferential to de novo. Id. It reasoned that "[t]rust law continues to apply a deferential standard of review to the

discretionary decisionmaking of a conflicted trustee, while at the same time requiring the reviewing judge to take account of the conflict when determining whether the trustee, substantively or procedurally, has abused his discretion." Id. The Court saw "no reason to forsake Firestone's reliance upon trust law in this respect." Id. Additionally, the Court noted that it is neither "necessary [n]or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict." Id. at 2351.

Our previous standard is now inconsistent with these instructions in one set of cases: When a plaintiff proves both that a conflict of interest exists and that this conflict affected the reasonableness of the administrator's discretionary decision. See Sullivan, 82 F.3d at 1255-56. We thus abandon the use of de novo review in these cases and set forth, in accordance with Glenn, the appropriate standard to be used in future cases.

**C.    The New Standard**

According to principles of trust law, a benefit determination is a fiduciary act, and courts must review de novo a denial of plan benefits unless the plan provides to the contrary. See Glenn, 128 S. Ct. at 2347-48. However, where the

13

plan grants the administrator discretionary authority to determine eligibility benefits, a deferential standard of review is appropriate. See id. at 2348. Under the deferential standard, a court may not overturn the administrator's denial of benefits unless its actions are found to be arbitrary and capricious, meaning "without reason, unsupported by substantial evidence or erroneous as a matter of law." Pagan, 52 F.3d at 442. "Where both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control." Pulvers, 210 F.3d at 92-93 (internal quotation marks and alteration omitted). "Nevertheless, where the administrator imposes a standard not required by the plan's provisions, or interprets the plan in a manner inconsistent with its plain words, its actions may well be found to be arbitrary and capricious." Id. at 93 (internal quotation marks and alteration omitted).

Following Glenn, a plan under which an administrator both evaluates and pays benefits claims creates the kind of conflict of interest that courts must take into account and weigh as a factor in determining whether there was an abuse of discretion, but does not make de novo review appropriate. See Glenn, 128 S.

14

Ct. at 2348. This is true even where the plaintiff shows that the conflict of interest affected the choice of a reasonable interpretation. See id.

"[W]hen judges review the lawfulness of benefit denials, they [should] take account of several different considerations of which a conflict of interest is one." Id. at 2351. The weight given to the existence of the conflict of interest will change according to the evidence presented. "[W]here circumstances suggest a higher likelihood that [the conflict] affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration," the conflict of interest

    should prove more important (perhaps of great importance) .
    . . . It should prove less important (perhaps to the
    vanishing point) where the administrator has taken active
    steps to reduce potential bias and to promote accuracy, for
    example, by walling off claims administrators from those
    interested in firm finances, or by imposing management
    checks that penalize inaccurate decisionmaking irrespective
    of whom the inaccuracy benefits.

Id. (citation omitted). As the Supreme Court has said, this "kind of review is no stranger to the judicial system," and judges will be able "to determine lawfulness by taking account of several different, often case specific, factors, reaching a result by weighing all together." Id.

15

In light of these changes, the question McCauley raised of whether the district court erred in refusing to review the benefit denial de novo is no longer pertinent.  The question remains, however, whether the district court erred in finding that, as a matter of law, First Unum's denial was not arbitrary or capricious.  We now turn to that question.

**II.  Weighing the Factors**

**A.    The First Benefit Denial**

First Unum's long-term disability policy defines "disability" and "disabled" as follows:

"Disability" and "disabled" mean that because of injury or sickness:

1. the insured cannot perform each of the material duties of his regular occupation; or

2. the insured, while unable to perform all of the material duties of his regular occupation on a full time basis, is:

    a. performing at least one of the material duties of his regular occupation or another occupation on a part-time or full-time basis; and

    b. earning currently at least 20% less per month than his indexed pre-disability earnings due to that same injury or sickness.

When McCauley first applied for long term disability benefits, First Unum requested additional information from his treating physician about his ability to perform his job duties in

16

order to ascertain whether he qualified as disabled under the policy's definition.  In response, McCauley's physician wrote that:

> (1) [McCauley] is restricted to heavy lifting and extreme physical exertion.  He also has limitations on increased workload secondary to fatigue syndrome, occasional nausea and pain in the right upper abdominal quadrant secondary to hepatic resection.
>
> (2) [McCauley] is limited to extreme workload and increased hours due to fatigue, nausea and intermittent pain.[1]

The medical records before the administrator also showed that McCauley was "chronically stable" and that there was no "evidence of active cancer."  Upon reviewing this information, a nurse employed by First Unum determined that the medical record "does not support total impairment."  First Unum therefore concluded that McCauley was not disabled because his regular occupation as a tax attorney was sedentary. First Unum communicated this conclusion to McCauley in a letter stating:

> [T]he medical information does not support an impairment of such severity that would preclude your ability to perform your occupation. [Your physician] restricted you from heavy lifting and extreme physical exertion.  He

---

[1]     We note that the physician's letter states that McCauley was restricted "to" heavy lifting and "to" extreme workload, which we can only presume was meant to read "from" heavy lifting and "from" extreme workload.  Like the district court (and the subsequent First Unum letter to McCauley), we take the phrases to mean that McCauley was restricted from such activities.

17

also limited increased workload and increased hours. These restrictions and limitations would not prevent you from performing the material duties of your sedentary occupation.

Like the district court, we conclude that First Unum's initial denial is supported by the correspondence from McCauley's physician and other medical information in the administrative record. The record before First Unum at the time of the denial indicated that McCauley's cancer had been treated successfully and that his restrictions were limited to extreme workload, increased hours, heavy lifting, and extreme physical exertion. First Unum's denial under those circumstances was therefore not arbitrary and capricious.

First Unum's response also invited McCauley to send "new, additional information to support [his] request for disability benefits." First Unum stated that a request for review of its decision should be accompanied by his "comments and views of the issues, as well as any documentation [he] wish[es] First UNUM to consider." First Unum thus allowed McCauley to appeal its decision directly to First Unum and permitted him to submit additional information in support of his appeal. Accordingly, McCauley requested a review of the benefits denial, which was processed internally by a First Unum claims appeal specialist in

18

coordination with the First Unum nurse who originally recommended that McCauley's claim be denied.

**B.    McCauley's Appeal of the First Denial to First Unum**

In support of his appeal to First Unum, McCauley submitted a letter challenging First Unum's findings.  He made clear that he was not disabled because of active cancer but as a result of "the drastic measures used to effect a cure."  Further, McCauley submitted additional evidence of his current medical issues in the form of a memorandum that he asserted was submitted with his physician's full knowledge and approval.

Specifically, McCauley's memorandum lists his medical issues as (1) chronic diarrhea, (2) chronic and acute renal impairment, (3) progressive vascular sclerosis, (4) high cholesterol, (5) insomnia, and (6) incisional scarring and pain.  With regard to his diarrhea, the memorandum states that McCauley is only able to control bowel movements by carefully timing his food ingestion and lists a number of ways in which this limits his daily activities.  Respecting his renal impairment, the memorandum explains that McCauley has chronic blood in the urine and pain in the kidney area and that he forms a kidney stone every two weeks.  As a result, his physician recommends that he not sit for long periods of time.  Moreover, the memorandum states that during the

19

acute phase of his renal impairment, "it is impossible for the patient to perform at any level." As to his vascular sclerosis, the memorandum explains that McCauley's vascular system was permanently damaged by the chemotherapy treatments and that he suffers "severe chronic headaches at the base of the skull, resulting in an inability to focus eyesight and a lack of concentration." His insomnia is described as "chronic and recurring," resulting in a "general feeling of lethargy and malaise" and leaving him with a "need to take naps during the day." The memorandum also states that McCauley "is in pain on an almost constant basis" and takes Percocet, an opiate, to manage that pain.

After receiving this information, First Unum again rejected McCauley's application. The nurse reviewing McCauley's file stated that "[n]o new medical ha[d] been submitted" and that the memorandum was "not an official document from [an] attending physician." However, when communicating this decision to McCauley, First Unum stated that it had rejected the health problems listed in McCauley's memorandum because "these conditions were acknowledged by your physician on the initial application and in his narrative letter of March 1995."

The reason First Unum gave to McCauley for rejecting the

20

information provided in McCauley's memorandum was unreasonable and deceptive.  Even the most cursory comparison with McCauley's earlier submission by a competent reviewer would have revealed the myriad of details about his condition, absent from the earlier submission, severely affecting his ability to work.  And contrary to First Unum's representation, it appears the information was afforded little if any weight by the nurse considering his appeal because the memorandum was not signed by a physician.  The rejection mischaracterizes the quality and detail of the evidence McCauley had submitted on appeal.  This is so particularly because the new submission purported to be information that the physicians at Sloan-Kettering believed justified McCauley's request for disability.

First Unum never told McCauley that the absence of a physician's signature was a reason for rejecting his information.  See Juliano v. Health Maint. Org. of N.J., Inc., 221 F.3d 279, 289 (2d Cir. 2000) (finding an insurer's failure to communicate the reason for denying coverage sufficient evidence to warrant de novo review of the administrator's decision under our old standard).  First Unum's response to McCauley implies that it would have been pointless to undertake any efforts to sort out the obvious and facial discrepancies in his record.  Hiding

21

behind a terse initial response to a set of questions it posed three months earlier, First Unum blithely ignored detailed descriptions constituting clear proof of total disability--apparent even to a lay person--purporting to be the views of McCauley's physicians.

Taken in combination, these factors are plainly exacerbated by First Unum's conflict of interest, as both administrator and payor, for what else would have influenced First Unum to avoid following up on simple inquiries prompted by McCauley's June submission?  For example, had McCauley been informed that his physician's signature at the bottom of the memorandum was what was needed for First Unum's nurse to consider the information, he could have easily cured that defect.  Additionally, McCauley's physician clarified in a deposition that he agreed with the health issues and limitations set forth in the memorandum, finding it to be "a very appropriate review of [McCauley's] medical status."  Had he been apprised of them, McCauley plainly would have had no trouble addressing First Unum's undisclosed and uninvestigated concerns.

First Unum argues that it considered the information McCauley submitted, although it admits the nurse assigned to evaluate the claim on its medical merits did not consider the

22

information.  According to First Unum, the memorandum was accounted for by the claims appeal specialist, whose rejection of the memorandum was reasonable in light of McCauley's physician's earlier letter indicating that McCauley was only restricted from extreme workload and physical exertion.  However, that letter, which simply provided brief answers to First Unum's medical questionnaire, differs starkly from the severe limitations and conditions depicted in the memorandum, which McCauley's physician later confirmed as accurate.  The memorandum flatly contradicts First Unum's finding that McCauley was capable of performing a sedentary occupation and completing the ordinary tasks of a tax attorney.  Instead, the memorandum stated that McCauley (1) was in constant pain, (2) had no control of his bowels, (3) was discouraged from sitting for long periods of time, (4) was unable to read for long periods of time, (5) required naps in the middle of the day, (6) passed two kidney stones per month at which time he would be unable to perform at any level, and (7) was required to take an opiate to manage his pain.  First Unum never explained how McCauley could continue to perform the material duties of a tax lawyer despite these restrictions.  Although First Unum stated that these issues described in the memorandum were considered in the original denial, the record plainly reflects

23

that they were not.

The district court found that First Unum reasonably believed that McCauley's physician was aware of the conditions described in the memorandum at the time he set out McCauley's limitations in his letter to First Unum, and thus, that the document did not constitute new information. McCauley, No. 97 Civ. 7662, 2006 WL 2854162, at *10. For the reasons stated above, we disagree. It was unreasonable for First Unum to conclude that the conditions described in the memorandum were equivalent to those described in McCauley's first application. It was also unreasonable for First Unum to conclude that the conditions described in the memorandum did not render McCauley disabled from performing his regular occupation. In sum, we do not believe that a rational claims administrator could have reviewed the limitations and symptoms listed in the memorandum and found that the physician's earlier narrative comported with those medical conditions. At a minimum, further investigation was required.

Instead, First Unum seized upon the earlier questionnaire and ignored the memorandum. This kind of wholesale embrace of one medical report supporting a claim denial to the detriment of a contrary report that favors granting benefits was determined in Glenn to be indicative of an administrator's abuse of discretion.

24

See 128 S. Ct. at 2352. The Glenn Court noted that there the insurance company unreasonably "emphasized a certain medical report that favored a denial of benefits [and] had deemphasized certain other reports that suggested a contrary conclusion." Id. The Court went on to find that this factor, in combination with the presence of a conflict of interest and other serious concerns, warranted setting aside the administrator's discretionary decision. Like the Court in Glenn, we find First Unum's reliance on the earlier narrative to be indicative of an abuse of discretion.

First Unum compounded its deception by representing to McCauley that the records submitted in support of his claim including the memorandum were reviewed by First Unum's on-site physician, who concluded that the restrictions and limitations would not preclude McCauley from performing his occupation. In fact, no records were reviewed by a physician at First Unum. These deceptions constitute additional powerful evidence that First Unum's denial of McCauley's appeal was arbitrary and capricious.

**C. First Unum's Past History**

This case also involves another relevant consideration specifically referenced in Glenn: "[W]here an insurance company

25

administrator has a history of biased claims administration." *Id.* at 2351. First Unum is no stranger to the courts, where its conduct has drawn biting criticism from judges. A district court in Massachusetts wrote that "an examination of cases involving First Unum . . . reveals a disturbing pattern of erroneous and arbitrary benefits denials, bad faith contract misinterpretations, and other unscrupulous tactics." Radford Trust v. First Unum Life Ins. Co., 321 F. Supp. 2d 226, 247 (D. Mass. 2004), rev'd on other grounds, 491 F.3d 21, 25 (1st Cir. 2007). That court listed more than thirty cases in which First Unum's denials were found to be unlawful, including one decision in which First Unum's behavior was "culpably abusive." Id. at 247 n.20. Also, First Unum's unscrupulous tactics have been the subject of news pieces on "60 Minutes" and "Dateline," that included harsh words for the company. Id. at 248-49. First Unum has fared no better in legal academia. See John H. Langbein, Trust Law as Regulatory Law: The Unum/Provident Scandal and Judicial Review of Benefit Denials Under ERISA, 101 Nw. U. L. Rev. 1315 (2007). In light of First Unum's well-documented history of abusive tactics, and in the absence of any argument by First Unum showing that it has changed its internal procedures in response, we follow the Supreme Court's instruction and emphasize

26

this factor here.  Accordingly, we find First Unum's history of deception and abusive tactics to be additional evidence that it was influenced by its conflict of interest as both plan administrator and payor in denying McCauley's claim for benefits.

**D.    Summary Judgment**

After reviewing all the evidence, we conclude that First Unum's denial of McCauley's appeal to First Unum was arbitrary and capricious.  We thus find that the district court erred in granting summary judgment to First Unum and vacate the judgment.  While ordinarily it would be appropriate for us to vacate and remand for further proceedings, there is no need to do so here because the evidence in the record conclusively shows that McCauley is entitled to judgment as a matter of law.  See Glenn, 461 F.3d at 675 (reversing district court's award of summary judgment in favor of insurance company, granting summary judgment in favor of insured, and remanding to the district court for the reinstatement of retroactive benefits); Travelers Cas. & Sur. Co. v. Gerling Global Reins. Corp. of America, 419 F.3d 181, 194 (2d Cir. 2005) (same but without mentioning retroactive benefits).  In addition to the memorandum's description of McCauley's severe and debilitating health problems, the only physician's recommendation in the record--that made by Dr. Daugherty--

27

supports a finding of disability.

To recap, we conclude the following: (1) First Unum operated under a conflict of interest because it was both the claims administrator and payor of benefits; (2) First Unum's reliance on one medical report in support of its denial to the detriment of a more detailed contrary report without further investigation was unreasonable; (3) First Unum deceptively indicated to McCauley that the medical professional assigned to review his records was a medical doctor when the individual was in fact a nurse, failed to obtain a physician's recommendation, and mischaracterized its rationale for continuing to deny benefits; (4) First Unum has a well-documented history of abusive claims processing; and (5) observations (2), (3), and (4), above, collectively lead to the conclusion that First Unum was in fact affected by its conflict of interest. In light of these observations, we find that a reasonable trier of fact could only come to one conclusion: First Unum's denial was arbitrary and capricious. We award McCauley summary judgment in his favor. He is entitled to benefits and interest to run from September 18, 1995, the date on which First Unum rejected his appeal.

**CONCLUSION**

For the foregoing reasons, the judgment of the district

28

court is REVERSED, and the cause is REMANDED to the district court to enter summary judgment in favor of appellant and for the calculation of benefits to be awarded to appellant.  Costs of the appeal and attorney fees incurred in pursuit of benefits are awarded to appellant.