14-4593
*Caban v. Employee Security Fund*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at 40 Foley Square, in the City of New York, on the 3rd day of November, two thousand fifteen.

Present:    ROBERT A. KATZMANN,
                        *Chief Judge*,
                  ROSEMARY S. POOLER,
                  DENNY CHIN,
                        *Circuit Judges.*

─────────────────────────────────────────

WILLIAM CABAN,

                        *Plaintiff-Appellant*,

                  v.                                              No. 14-4593-cv

EMPLOYEE SECURITY FUND OF THE ELECTRICAL
PRODUCTS INDUSTRIES PENSION PLAN, PENSION
TRUST FUND OF THE PENSION HOSPITALIZATION
AND BENEFIT PLAN OF THE ELECTRICAL
INDUSTRY,

                        *Defendants-Appellees*.

─────────────────────────────────────────

For Plaintiff-Appellant:        NOAH A. KINIGSTEIN, New York, NY.

For Defendants-Appellees:     PETER D. DECHIARA, Cohen, Weiss and Simon LLP, New
                                          York, NY.

Appeal from the United States District Court for the Eastern District of New York (Gold, *M.J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED,** and **DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant William Caban appeals from a judgment of the district court, entered November 19, 2014, that granted summary judgment in favor of the defendants in Caban's action to recover disability pension benefits pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). We assume the parties' familiarity with the relevant facts, the procedural history, and the issues presented for review.

Caban was an electrical worker and a member of Local 3 of the International Brotherhood of Electrical Workers, which is affiliated with the AFL-CIO ("Local 3"). Over the course of several decades, Caban worked for various employers in the electrical industry. Pursuant to collective bargaining agreements with Local 3, many of those employers contributed to the two benefit plans named as defendants in this case: the Employee Security Fund of the Electrical Products Industries Pension Plan (the "ESF Plan") and the Pension Trust Fund of the Pension Hospitalization and Benefit Plan of the Electrical Industry (the "PTF Plan"). Both the ESF Plan and the PTF Plan are administered by the Joint Board of the Electrical Industry (the "Joint Board"), but they are separate pension plans, have separate Boards of Trustees, have different contributing employers, provide different benefits, and are subject to different eligibility requirements.

On June 24, 2005, while working for QNCC Electrical Contracting Corp., an employer that contributes to the PTF Plan, Caban fell approximately forty feet from a ladder, sustaining serious injuries. Caban applied for workers' compensation benefits, which he received from approximately July 20, 2006 through August 2010 in the amount of approximately $400 per

2

week.  Caban filed a third party lawsuit, and when that lawsuit was settled, Caban repaid the workers' compensation provider for the benefits he had received in accordance with Section 29 of the New York Workers' Compensation Law.  During the intervening time period, Caban also applied to the Joint Board for disability pension benefits.  The Joint Board initially denied his application, but, after this action was filed, reversed its decision and awarded him a monthly disability pension of $490.65 under the PTF Plan, payable retroactive to September 2010.  Caban appealed various aspects of the Joint Board's determination to the PTF Board of Trustees, which denied his appeal, and then raised his claims in the district court.  The district court granted summary judgment in favor of the defendants on all of Caban's claims.

In the present appeal, Caban contends that:  (1) the district court applied the wrong standard in its review of the PTF Plan's determination; (2) the district court erred in granting summary judgment in favor of the defendants with respect to the start date of Caban's disability pension benefits; and (3) the district court erred in granting summary judgment in favor of the defendants with respect to the amount of Caban's monthly disability pension.

In an ERISA action, we review the district court's grant of summary judgment *de novo*, applying the same legal standard as the district court.  *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 82 (2d Cir. 2009).  "Summary judgment is appropriate only if, after drawing all permissible factual inferences in favor of the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  *O'Hara v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 642 F.3d 110, 116 (2d Cir. 2011).

Caban argues, first, that the district court applied the wrong standard of review.  In an ERISA action to enforce the terms of a benefit plan, the plan administrator's interpretation "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary

discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where the written plan grants the administrator such discretionary authority, the district court reviews for abuse of discretion, and "will not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.'" *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995) (quoting *Firestone*, 489 U.S. at 115). "This standard is 'highly deferential,' and 'the scope of judicial review is narrow.'" *Roganti v. Metro. Life Ins. Co.*, 786 F.3d 201, 211 (2d Cir. 2015) (quoting *Celardo v. GNY Auto. Dealers Health & Welfare Trust*, 318 F.3d 142, 146 (2d Cir. 2003)).

Nonetheless, where the plan administrator has a conflict of interest, "that conflict must be weighed as a 'factor in determining whether there is an abuse of discretion.'" *Firestone*, 489 U.S. at 115 (quoting Restatement (Second) of Trusts § 187 cmt. d (1959)) (alterations omitted). A conflict of interest exists, for example, where "an administrator both evaluates and pays benefits claims." *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 133 (2d Cir. 2008); *see also Durakovic v. Bldg. Serv. 32 BJ Pension Fund*, 609 F.3d 133, 138 (2d Cir. 2010) ("Employer-administrators have a categorical conflict."). The weight to be accorded to such a conflict in determining whether there was an abuse of discretion depends on the "likelihood that it affected the benefits decision." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008). Accordingly, "[n]o weight is given to a conflict in the absence of any evidence that the conflict actually affected the administrator's decision." *Durakovic*, 609 F.3d at 140.

Here, there is no dispute that the written terms of the PTF Plan grant the PTF Board of Trustees discretionary authority to determine eligibility for and calculate the amount of benefits to be awarded. Accordingly, the district court correctly applied the arbitrary-and-capricious standard. *See McCauley*, 551 F.3d at 132–33. Caban contends, however, that the district court

4

erred by giving no weight to the Joint Board's purported conflict of interest.[1]  Specifically, Caban argues that the Joint Board's various errors and delays in processing his claim—such as certain inaccuracies in its communications with him (which were later corrected), the delay in processing his appeal, the Joint Board's failure to notify him that he was eligible to file for a PTF pension, and the Joint Board's reversal of its initial denial of benefits—establish a high likelihood that the Joint Board's conflict of interest affected its benefits determination.

However, as the district court correctly held, these facts suggest only that the Joint Board suffered from administrative deficiencies, not that its decisions were affected by a conflict of interest.  Indeed, the facts here bear none of the indicia of conflicted decisionmaking that we have found in prior cases.  *See, e.g.*, *Durakovic*, 609 F.3d at 140 (finding that conflict affected decision where defendant funds "summarily dismissed" the claimant's expert report, "which was vastly more detailed and particularized than the report on which the Funds relied"); *McCauley*, 551 F.3d at 135–36 (finding that conflict affected decision where plan administrator refused to consider the claimant's evidence of his disability, giving an "unreasonable and deceptive" explanation for its decision); *see also Roganti*, 786 F.3d at 218 (holding that "an irrational decision or a one-sided decisionmaking process can alone constitute sufficient evidence that the administrator's conflict of interest actually affected the challenged decision").  Accordingly, we find no error either in the standard of review applied by the district court or in its conclusion that the Joint Board's purported conflict of interest was entitled to no weight.

Second, Caban argues that the district court erred in granting summary judgment to the defendants with respect to the start date of his disability pension benefits.  Specifically, the Joint Board determined that, because Caban received workers' compensation benefits through August 2010 in an amount exceeding his disability pension benefits, the latter should be reduced to $0

---

[1] We assume without deciding that the Joint Board was, in fact, conflicted.

during that period. The Joint Board's decision relied on Section 4.04 of the PTF Plan, which states: "In all cases, a Participant who is eligible to receive a Disability Pension shall have the monthly benefit reduced by the monthly amount of the statutory workers' compensation benefits payable to the Participant." J.A. 139. Caban contends that this provision should not apply to him because he was required by New York law to reimburse his workers' compensation carrier from the settlement proceeds of his third-party tort suit.

However, on its face, Section 4.04 applies "[i]n all cases." J.A. 139. Nothing in the PTF Plan indicates that Caban's repayment of the workers' compensation lien alters the Joint Board's right to offset his disability benefits by the amount of the workers' compensation benefits he received. The Joint Board's refusal to read in such a provision was neither arbitrary nor capricious; to the contrary, it was consistent with the written terms of the PTF Plan. *See Connors v. Conn. Gen. Life Ins. Co.*, 272 F.3d 127, 137 (2d Cir. 2001) ("The fact that [the plaintiff] ultimately repaid his workers' compensation benefits does not change [the insurer's] rights under the Policy. Any other result would presume that additional benefits are due to [the plaintiff] that were not stated in the insurance policy by the parties to the insurance contract."). Accordingly, the district court's grant of summary judgment regarding the start date of Caban's disability pension benefits was not in error.

Third, Caban argues that the district court erred in granting summary judgment in favor of the defendants with respect to the Joint Board's calculation of his monthly pension benefits as $490.65. Caban contends that the Joint Board should have used the pension credit rate applicable to "A"-rated journeypersons because he was highly skilled, performed the same work as an "A"-level employee, and occasionally worked jobs that paid the "A" rate. However, Section 4.01 of the PTF Plan provides that the "A" rate is applicable to participants "who

6

separate from Covered Employment on or after May 15, 2003, who were receiving the 'A' rate of pay and whose Employer was remitting the 'A Contribution Rate.'" J.A. 136. We agree with the district court that the most natural reading of this language is that the participant's pension benefits depend on his rate of pay and employer contribution at the time he separated from covered employment. Because it is undisputed that Caban was receiving less than the "A" rate of pay at the time he became disabled, the Joint Board correctly applied the formula set forth in Section 4.05 of the PTF Plan, J.A. 140, which applies to participants who received other than the "A" rate of pay at the time of separation.

Caban further argues that, even if he was not entitled to the "A"-rate pension, the Joint Board used the wrong variables to calculate his pension benefits. Specifically, he argues that the Joint Board should have used different figures for the pension credit rate, for the "A" level employer contribution rate, and for his own employer's contribution rate, resulting in a monthly pension benefit of $1,152. However, Caban fails to cite any record evidence supporting his proposed rates. As the district court correctly determined, the plain terms of the PTF Plan and the collective bargaining agreement support the calculations performed by the Joint Board. Accordingly, the district court's grant of summary judgment on this claim was appropriate.

Finally, Caban argues that the Joint Board failed to provide adequate notice of the reasons for its decision. *See Juliano v. Health Maint. Org. of N.J., Inc.*, 221 F.3d 279, 287 (2d Cir. 2000) ("The purpose of [the 'full and fair review'] requirement is to provide claimants with enough information to prepare adequately for further administrative review or an appeal to the federal courts." (alteration in original) (quoting *DuMond v. Centex Corp.*, 172 F.3d 618, 622 (8th Cir. 1999)). In particular, he argues that the Joint Board failed to explain how the reciprocal agreement between the PTF Plan and the ESF Plan affected the value of the pension credits he

7

earned under the respective plans.  Contrary to Caban's contentions, however, the Joint Board

sent him a detailed letter dated February 29, 2012, which explained how it calculated his

benefits, including the application of the reciprocal agreement.  The Joint Board further supplied

him with worksheets showing the specific calculations used.  Accordingly, the Joint Board met

its obligation to provide adequate notice of the reasons for its decision, and the district court's

grant of summary judgment was not in error.  *See Bowman Transp., Inc. v. Ark.-Best Freight

Sys., Inc.*, 419 U.S. 281, 285 (1974) ("The agency must articulate a 'rational connection between

the facts found and the choice made.'").

 We have considered the Plaintiff-Appellant's remaining arguments and find that they

lack merit. For the reasons given, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

8